## Overdeer's Administrator *versus* Updegraff.

1. Hinney owning two lots, built on both: on No. 2 he left an alley under the second story of the house, extending beyond both houses, with a gate into the back lot of each. The alley was used for fourteen years by the occupants of both houses, Hinney being the occupant of No. 2. After his death, on petition of his administrator, No. 2, described by its lines, &c., was sold for payment of debts by order of the Orphans' Court; the alley was not mentioned in any of the court proceedings. In the conditions of sale and the deed it was reserved. *Held*, That the purchaser took subject to the easement.

2. The purchaser having bought under the conditions mentioning the alley, was estopped from claiming to hold it free of the easement.

3. An administrator selling by order of court, land which is subject to an easement, may sell it so subject, although it be not noticed in any of the proceedings.

4. The administrator's deed was not recorded; the purchaser afterwards sold without actual notice to her vendee of the alley, which was apparent, and its use by the occupants of the adjoining lot, indicated by the gate. This was sufficient to put the vendee upon inquiry as to their right to the alley.

5. The deed of the administrator was a link in the title, and it was the vendee's duty to examine it, and if he could have procured it by ordinary diligence, he had constructive notice of the reservation.

6. An orphans' court sale even after confirmation, does not divest the title of the heir until the deed be delivered; until then it remains in the power of the court.

7. If the heir die after the confirmation but before the deed, his interest passes as land.

8. The easement was apparent and continuous, and the purchaser would have taken subject to it, although not mentioned in the conditions or deed.

9. Demmy's Appeal, 7 Wright 168; Kieffer *v.* Imhoff, 2 Casey 438; McCarty

[Overdeer v. Updegraff.]

v. Kitchenman, 11 Wright 239; Phillips v. Phillips, 12 Id. 178; Penna. R. R. v. Jones, 14 Id. 417, recognised.

May 11th 1871.    Before AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Cumberland county*: No. 72, to May Term 1871.

On the 30th of June 1868, William Overdeer brought an action of trespass against Joseph Updegraff.

The parties occupied houses on adjoining lots.   On the lot of the plaintiff was an alley, into which there was an entrance from the lot occupied by the defendant; the plaintiff closed the entrance by boarding it up; the defendant took away the boarding, for this the action was brought.   The question tried was whether the defendant had a right of passage through and upon the alley.

The plaintiff having died after bringing the suit, his death was suggested on the record, and Matilda Overdeer, his administratrix, substituted.

Both lots had been owned by one William Hinney in his lifetime.   They were situated on the north side of Main street, in the borough of Mechanicsburg.   The whole front of the western lot, called the Phillips lot, was occupied by two store-rooms in one house.   He built on the eastern lot, leaving an alley running back about four feet beyond the back wall of the front buildings, with two gates or openings, one into each lot; the second story of the east house extending over the alley and adjoining the first house; both houses had been built about 1850.   During Hinney's lifetime, he lived in the east (or Overdeer) house, and he and his tenants occupying the Phillips house used the alley in common.   He died in 1864, and his administratrix, Sarah H. Phillips, on the 26th of August in that year applied to the Orphans' Court for an order to sell the east lot for the payment of his debts.   The petition described the lot, but mentioned nothing of the alley or right of way.   The order of sale, issued on the same day, directed the time of sale, and the terms of payment; possession to be given on the 1st of April 1865, and a deed made, but did not refer to the alley.   The administratrix exposed the lot to sale under written conditions signed by her, containing the terms, &c., fixed by order of the court; also the following, viz. :—

" This property contains about twenty-eight feet in front and rear, the line of which is marked by stakes on the ground, &c.

" For the benefit of the owners of the adjoining property of William Hinney, deceased, a right of way is reserved through the alley between the two houses and for four feet beyond the rear of said houses."

To the conditions was attached a draft showing the lots with the alley distinctly marked on it, and the gates opening into the respective lots; and, also showing the line fence between the back

part of the lots. The lot was sold to Ann M. Gross, who signed under the conditions the following acknowledgment of purchase :—

" I, Ann M. Gross, do hereby acknowledge that I have become the purchaser of the real estate of William Hinney, deceased, at and for the sum of twenty-two hundred dollars, upon the foregoing terms and reservations, &c., with which I will comply."

The administratrix returned that she had sold the lot to Mrs. Gross for $2200, but nothing was said in the return as to the alley. The sale was confirmed, October 24th 1864. On the 6th of April 1866, Mrs. Gross conveyed to E. P. Zinn ; he, on the 2d of April 1867, to J. S. Becker ; he, on the 10th of May 1867, to T. A. Woods, and he, March 27th 1868, to William Overdeer, the plaintiff. Mrs. Phillips was the heir at law of Hinney. Updegraff, the defendant, was her tenant in 1868, the time of the trespass alleged. At that time, the defendant after notifying the plaintiff to open the alley " in two hours," which the plaintiff failed to do, broke down the gate with an axe.

The case was tried, January 18th 1870, before Graham, P. J., when the foregoing facts appeared.

The plaintiff also gave evidence by Mrs. Gross, that she had received a deed from the administratrix which was lost the spring before the trial ; the deed was not recorded, it was not called for by any of the parties till the plaintiff purchased ; when she bought she had been living in the Phillips house two years ; Mr. Hinney allowed her to go in and out through the alley when she pleased ; after her purchase she made a line fence up to the Phillips house, except room for a door to pass into the alley from their yard ; Overdeer called for her deed in July or August 1868, she handed it to him ; he said he was so nervous he could not read it—said he would come again ; when he came she would not let him see it, and declined to give him the deed ; no one came for it afterwards.

For the defendant, Mrs. Phillips testified :—That her father, Hinney, had made the alley when he built the Phillips house ; there was another opening there through the store-room from the inner part of the house out, the alley had been used uninterruptedly till Overdeer came ; Mrs. Gross was living in the Phillips house, and using the alley when she bought the Overdeer house ; witness, as administratrix, made a deed to Mrs. Gross ; in the deed the use of the alley was reserved for the occupants of the Phillips house ; the alley was used after sale to Mrs. Gross as before. There was other evidence of the use of the alley by the occupants of the Phillips' house.

The plaintiff gave evidence by other witnesses that the alley was reserved in the deed.

He gave evidence that Mrs. Gross directed the man who put up the line fence to make it with an opening four feet at the back

[Overdeer *v.* Updegraff.]

of the Phillips house; the post at that end of the fence was placed where it was at the time of the trespass; at the time of putting up the fence Mrs. Gross said there was right of way reserved.

The plaintiff's points with the answers were :—

1. " The right of way claimed by defendant, in this case, is an encumbrance on the land owned by the plaintiff. To be valid against the plaintiff, in this case, it should have been put on record; or actual notice of its existence should have been given to him before he purchased the property. The mere use of the alley puts the plaintiff only upon inquiry, and directs him to the recorded title, and to the time during which the use has existed. The recorded title in this case is perfect. The administratrix had no right to alter the terms and conditions of sale, without referring them to the court for confirmation and approval, and the purchaser was not bound to look for any other terms and conditions, than those made in the order of court, and confirmed afterwards. Having discovered that a *deed had been executed, the purchase-money paid, and possession given to the first purchaser,* he had a right to consider, the deed being lost, that the deed recited only the conditions as recorded in the Orphans' Court docket, and any other conditions, not recorded, and which would create a lien, or encumbrance of any kind upon the premises, cannot bind him, nor affect his title; and therefore the plaintiff has a right to recover in this action."

Answer: " We cannot answer this in the affirmative. Although the right of way claimed by the defendant in this case is an encumbrance on the land owned by the plaintiff—we cannot say that to be valid in this case against the plaintiff, it should have been put on record or actual notice of its existence given to him before the purchase of the property—nor can we say that the use of the alley is only notice to the plaintiff to direct him to the record of title, and to the time during which the use had existed. Nor do we consider the recorded title in this case perfect. There was an important link in the chain missing, the deed from the administratrix to Ann Gross was wanting. The deed to Overdeer, and the prior deeds from Ann Gross down to Overdeer, all recited the sale by order of the Orphans' Court. The order of court directed a deed to be made to the purchaser by the administratrix—of this the purchaser had record notice by the decree of court. Was it then their duty, in the exercise of ordinary diligence and prudence, to make inquiry for these deeds, and would such inquiry have led to its discovery ? "

" But plaintiff's counsel further allege that the administratrix had no right to alter the terms and conditions of sale, and that the purchaser was not bound to look for any other terms than those made in the order of court. Having discovered that a deed

19 P. F. SMITH—8

had been executed, the purchase-money paid and possession given to the first purchaser, he has a right to consider, the deed being lost, that the deed recited only the conditions as recorded in the Orphans' Court docket; and any other conditions not recorded which would create an encumbrance upon the premises, cannot affect his title."

" In this case the terms on which the property was sold, are the same as directed by the court, as to payment of the purchase-money. It is true the lot was sold subject to an easement not directed by the court, but this applies more properly to what was sold than the terms on which it was sold. The terms of sale apply to the times and manner of payment. No case has decided that where the conditions of sale reserve an easement for the benefit of an adjoining property, and the purchaser takes a deed with such reservation; if the easement reserved is not mentioned in the return of sale by the administrator that the purchaser, contrary to the terms of his deed, will hold the property clear of such incumbrance. [The point assumes that the deed to Ann Gross was lost, but the evidence is that this deed was not lost until after the purchase by Overdeer, but remained in the hands of Miss Gross and was exhibited by her to Overdeer after his purchase.]"

2. "No actual notice of the existence of the right of way is proved to have been given to the plaintiff, before his purchase; nor is it proved that either he or the person from whom he purchased knew that such a right was claimed, and therefore the plaintiff has a right to recover in this case; the trespass not being denied, but admitted in the pleadings."

" In answer to the second point we say that actual notice of the existence of the right of way is not necessary to the purchaser or those under whom he claims, to defeat a recovery by the plaintiff."

3. " The existence of a deed from the administratrix to the purchaser at the sale, is not necessary to pass the title, if all the conditions of sale have been complied with, and possession of the property given, and if notice of the existence of a deed was not brought home to the subsequent purchaser, his inquiries would be satisfied, by the discovery that the conditions of sale were complied with and possession given, and therefore he was not bound to look for a deed."

" The third point we decline answering as requested. A deed from the administratrix to Ann Gross was necessary to pass the legal title. Although the sale and payment of the purchase-money would give the purchaser an equitable title, a deed is necessary to pass the legal estate."

" It is clear that Ann Gross who took a deed from the administratrix, with the reservation of a right of way over the alley, would hold subject to this easement, but plaintiff's counsel contend that notice of this deed must be brought home to subsequent pur-

[Overdeer v. Updegraff.]

chasers, and their inquiries would be satisfied by the discovery that the conditions of sale had been complied with, possession given, and therefore they were not bound to look for a deed. It is not necessary, under the evidence in this case, that actual notice should be brought home to purchasers claiming title through Ann Gross, that a deed had been executed to her. The decree and order of sale by the court, directed the administratrix to execute a deed to the purchaser on the 1st of April 1865. This was record notice that the court directed a deed to be executed to the purchaser, and its absence in the chain of title, was notice to subsequent purchasers that they were buying but an equitable title, and the legal estate remained in the heirs of William Hinney."

In the general charge the judge referred to the facts, and after adverting to the deed of the administratrix said :   *   *   *

"[This deed is now lost, but it is clearly proved by Mr. Shearer, the attorney who conducted the proceedings in the Orphans' Court, and wrote the deed, and by other witnesses who saw and read the deed in the hands of Ann Gross, the purchaser at the sale by order of the Orphans' Court, that the reservation of the right of way in the alley was in the deed by the administratrix to Ann Gross, and this is not controverted.]   *   *   * ·

" The question presented is, whether Mrs. Phillips and her tenants had the right of way over the alley. When Ann Gross sold to Mr. Zinn she did not hand over her deed from the administratrix, and she did not record it, and in her deed to Zinn the reservation of the right of way in the alley to the Phillips property is not mentioned, nor is it mentioned in any of the subsequent deeds down to the deed to Overdeer."   *   *   *

"[The facts do not appear to be controverted, and the counsel of the respective parties have declined addressing you, considering the rights of the parties dependent upon questions of law, and both claiming to recover upon the law arising upon the facts of the case.]"

" The rule of law which is applicable to and must control this case is : That whatever puts a party on inquiry amounts to notice; provided the inquiry becomes a duty, as it always is, with a purchaser, and would lead to the requisite fact by the exercise of ordinary diligence and understanding. The question presented in this case is, does the evidence show that there was enough to put Mr. Zinn, the purchaser from Ann Gross, and the subsequent purchasers, down to Overdeer, upon inquiry which would have resulted in ascertaining that Mrs. Phillips, the owner of the adjoining lot, had a right of way through the alley in dispute. This is a fact for the determination of the jury. The defendant insists upon the affirmation of this proposition, and that it is established, first, by the user of the alley from the time the adjoining house was built by Mr. Hinney, by the tenants and owners of both

[Overdeer *v.* Updegraff.]

houses, until after the purchase by Overdeer. And second, by the missing link in the chain of title, which ordinary diligence could not have failed to discover.''

["The further fact of the missing deed is relied upon as sufficient to elicit inquiry, which would have resulted in ascertaining the true state of the title. This was a very important link in the chain of all the purchasers claiming title, through the sale by order of Orphans' Court. All the deeds refer to sale by order of court. The order of court directed a deed to be made to the purchasers. Did ordinary diligence require that the different purchasers should inquire, where is this missing deed? Where is the deed of the administratrix, to Ann Gross? And if this inquiry had been made, would it have resulted in the discovery of the requisite fact?] Where would ordinary intelligence and prudence require that this inquiry should be made? Mrs. Phillips lived in the same town. Her tenants occupied the house, and were in the constant use of this alley, and without any other way of access from the dwelling part to the street. Would an inquiry of Mrs. Phillips, or her tenants, have resulted in ascertaining that she claimed a right of way under a reservation in her deed to Ann Gross?

"And if this was not satisfactory, what prevented inquiry of Ann Gross which would have resulted in the discovery of the missing deed, for the deed was not lost until months after the purchase by Overdeer, and Miss Gross, who was examined as a witness, states that after the dfficulties occurred between Overdeer and Updegraff, about the use of the alley, Overdeer called on her and she exhibited to him the deed to her from Mrs. Phillips, the administratrix. [Had Overdeer been as prudent and diligent in inquiring about the title, before he purchased, as he was after he attempted to close the alley, the present difficulty between the parties would probably not have occurred.]

"From the facts stated we submit to you to say whether they were sufficient to put the parties claiming title through the Orphans' Court sale, upon inquiry, and whether the exercise of ordinary diligence and understanding would have resulted in the discovery of the fact that Mrs. Phillips had reserved a right of way in the alley in dispute. If you determine this in the affirmative, find for the defendant. If otherwise, then find a verdict for the plaintiff.''

The verdict was for the defendant.

The plaintiff removed the case to the Supreme Court and there assigned for error that the court refused to read his points to the jury.

2, 3, 4. The answers to his points.

The remaining assignments were to the portions of the charge in brackets.

[Overdeer *v.* Updegraff.]

*S. Hepburn* (with whom was *A. B. Sharpe*), for plaintiff in error, cited Demmy's Appeal, 7 Wright 68; Jacobs's Appeal, 11 Harris 477.

*C. E. Maglaughlin* and *W. Shearer*, for defendants in error, cited Leshy *v.* Gardner, 3 W. & S. 310.

The opinion of the court was delivered, May 27th 1872, by

WILLIAMS, J.—The main question in this case is whether the plaintiff's lot is subject to an easement appertenant to the lot occupied by the defendant. Both lots were formerly owned by William Hinney, deceased, who died seised of them in 1864. He occupied one of them in his lifetime, and his tenants the other, and he opened an alley between them, on the lot now owned by the plaintiff, for the use of himself and tenants. After his death his administratrix sold, by order of the Orphans' Court, the lot on which the alley was opened without any notice, either in the petition or order of sale, that it was to be sold subject to the easement or right to the use of the alley by the owners or occupants of the adjoining lot. But it was sold subject to the easement, and in the conditions of sale, signed by the purchaser, a right of way was reserved through the alley between the two houses, and four feet beyond the rear of said houses, for the benefit of the owners of the adjoining property belonging to the decedent's estate. By the terms of sale, as fixed by the Orphans' Court, possession was to be given on the 1st of April 1865, when a deed was to be made. The sale was made on the 15th of October 1864, and confirmed on the 24th of October; and about the 1st of April 1865, the administratrix executed a deed to the purchaser in which the right of way in the alley was reserved to the owners and occupants of the adjoining property then owned by the administratrix, the only daughter and heir of William Hinney, deceased. Strictly speaking, it may be true that an administratrix has no power to change the terms of sale, as fixed by the order of the Orphans' Court, without permission of the court. But if the property, ordered to be sold, is subject to an easement or right of way, I know of no reason why it may not be sold, subject thereto, though no notice be taken of its existence in the petition or order of sale; and if the property is so sold and conveyed, it seems to me that the purchaser takes it subject to the encumbrance. If the easement had been *appertenant* to the lot, can there be any doubt that it would have passed by the sale and conveyance, if expressly sold and conveyed along with the lot, though it may not have been described in the petition, order or return of sale? If the purchaser, in the one case, would have taken the easement with the lot, why should he not, in the other, take the lot subject to the easement? In this case Mrs. Gross, the purchaser at the

[Overdeer *v.* Updegraff.]

Orphans' Court sale had notice of the easement, and, by the express terms of the sale, bought the property subject to it; and therefore she would be estopped from claiming to hold it free and discharged of the servitude. So too the plaintiff, who claims title under her, holds the lot subject to the easement if he had notice of its existence and reservation when he purchased it. It is conceded that he did not have actual notice that Mrs. Gross purchased the property, and that it was conveyed to her expressly subject to a right of way through the alley reserved for the benefit of the owners of the adjoining property. But if he had notice of such facts as should have put him on inquiry, and which, by the exercise of ordinary diligence, would have led to the knowledge of its reservation, then he had constructive notice of it, which the law regards as equivalent to actual notice. The alley was plainly to be seen on the ground, and its use by the occupants of the adjoining lot was indicated by the gate in the partition fence which opened into the alley from the adjoining lot. This was sufficient to put him upon inquiry as to their right to the alley, and, if duly prosecuted, would doubtless have led to the knowledge that they claimed the right to its use because it had been laid out by the former owner for the use of the occupants of both lots, and because the plaintiff's lot had been sold and conveyed to the purchaser at the Orphans' Court sale, subject to the reservation of a right of way through the alley, for the benefit of the owners of the adjoining lot. But apart from this, if the deed of the administratrix formed an essential link in the chain of the title, it was his duty to examine it, and if he could have procured it by the exercise of ordinary diligence, he had constructive notice of the reservation. If the title did not pass to the purchaser by the confirmation of the sale, but remained in the decedent's heir until the execution and delivery of the deed by the administratrix, as has been repeatedly ruled, then her deed lay directly in the chain of title, and it was the plaintiff's duty to make the proper inquiry to obtain it. A sale by order of the Orphans' Court for the payment of the debts of a decedent is not absolute and unconditional. It depends for its validity upon the approval and confirmation of the Court. But, as said by Mr. Justice Strong in Demmy's Appeal, 7 Wright 168, the sale, even after confirmation, does not divest the title of the heirs of the decedent, for it remains in the power of the court until a deed has been executed and delivered. Until then, their right to maintain ejectment, even against the purchaser, is not gone : Leshey *v.* Gardner, 3 W. & S. 314. Until then, no conversion takes place, and if the heir of the decedent die, even subsequently to the confirmation of the report of sale, but before the deed, his interest descends as land, and not as money : Erb *v.* Erb, 9 W. & S. 147 ; Biggert's Appeal, 8 Harris 17. If, then, the plaintiff by the use of rea-

[Overdeer v. Updegraff.]

sonable diligence might have procured the deed, he had constructive notice of the reservation, and took the lot subject to it. Whether the plaintiff had such notice of the existence and use of the alley by the occupants of the adjoining lot as was sufficient to put him on inquiry, and which, if prosecuted with proper diligence, would have led to the knowledge that they claimed the right to its use under the reservation in the deed of the administratrix to the purchaser of the plaintiff's lot, was a question which the court below submitted with great fairness to the jury.

But if there had been no express reservation of the right to the use of the alley in the conditions of sale, and in the deed executed and delivered to the purchaser, the latter would have taken it subject to the servitude imposed upon it by the decedent for the use and benefit of the occupants of the adjoining lot. It was a continuous and apparent easement, and the law is well settled that in such a case the purchaser, whether at private or judicial sale, takes the property subject to the easement: Keeffer v. Imhoff, 2 Casey 438; McCarty v. Kitchenman, 11 Wright 239; Phillips v. Phillips, 12 Id. 178; Penna. R. R. Co. v. Jones, 14 Id. 417. The principles on which the doctrine rests are so fully and ably discussed in these cases that we need do no more than refer to them. Whether the plaintiff, then, had constructive notice of the reservation of the easement or not, is wholly immaterial. If it was continuous and apparent, as it unquestionably was, he took the lot subject to it. His complaint that the court took from the jury the question whether the deed of the administratrix contained a reservation of the right to the use of the alley by the owners of the adjoining lot, comes with bad grace if, as intimated in the charge, there was no controversy in regard to the fact on the trial. The court say: "The facts do not appear to be controverted, and the counsel of the respective parties have declined addressing you, considering the rights of the parties depending upon questions of law, and both claiming to recover upon the law arising upon the facts of the case." Neither of the points submitted to the court by the plaintiff was based on the assumption that the deed contained no reservation of the alley, nor was any instruction asked if the jury should find that there was no such reservation. Judging from the points put to the court, it would seem that no question was made in regard to the fact of the alleged reservation. But if the court was mistaken in saying that the facts do not appear to be controverted, the attention of the judge should have been called to the mistake at the time, and doubtless it would have been at once corrected. But whether it was a mistake or not, it did the plaintiff no harm, if, as we have seen, he took the lot subject to the servitude imposed on it for the use of the owner and occupants of the adjoining lot.

What we have said disposes of all the alleged errors with the ex-

[Overdeer *v.* Updegraff.]

ception of the first. This involves a question of fact, and is not sustained by anything on the record, nor by any evidence *dehors* the record. It is time that it was understood that all such assignments will be disregarded. They cannot be inquired into on a writ of error, and should not be made.

Judgment affirmed.