### VAN HORNE v. TROUSDALE et al.
### (No. 2222.)

Court of Civil Appeals of Texas. El Paso.
Oct. 4, 1928.

Rehearing Denied Oct. 25, 1928.

Knollenberg & Cameron, of El Paso, for appellant.

C. L. Galloway, C. W. Croom, and Sam B. Gillett, all of El Paso, for appellees.

HIGGINS, J. In September, 1909, Jack Raynolds acquired an unimproved tract of land in the Rio Grande Valley in El Paso county. He cleared and placed same in cultivation, and in 1910 constructed a ditch running east and west along the north line of the land. This ditch was constructed and used for the purpose of conveying water to the land for irrigation. It was connected with, and the water obtained from, the La Union irrigation ditch, which ran north and south to the west of the Raynolds land. The Canutillo lateral ditch branched off from the La Union ditch at a point northwest of the Raynolds land, ran eastwardly, and thence south to the east of the land.

By warranty deed dated September 14, 1912, Raynolds conveyed to Sam B. Gillett 30 acres of his land. The habendum clause of the deed reads:

"To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said Sam B. Gillett, his heirs and assigns forever."

The description of the land conveyed to Gillett covered a portion of the Raynolds ditch lying upon the north line of the 30 acres.

Raynolds conveyed to different parties various parcels of the land owned by him. The exact date of the conveyance is not shown by the record, but it is apparent title has long since passed from Raynolds. Among the parcels so conveyed is one that finally passed to the appellant Van Horne in the fall of 1925. The Van Horne tract lies between the Gillett tract on the west and the Canutillo lateral on the east. The Raynolds ditch, in part, is upon and along the north end of the Van Horne tract. The Raynolds ditch thus lies along and upon the north end of the Gillett and Van Horne tracts. These tracts were irrigated from such ditch; the water coming from the La Union ditch as above shown. Originally the La Union canal and Canutillo lateral were community ditches, but prior to June, 1918, the same had been taken over by the United States Reclamation Service under the Elephant Butte irrigation project. In order to provide necessary drainage of land in that section, the Reclamation Service, about June, 1918, dug a drainage ditch running north and south, west of the Van Horne tract. This ditch for a short distance passed through the northeast corner of the Gillett land, leaving a triangular tract of Gillett's land containing 1.47 acres lying east of the drainage

ditch. This small tract was bounded on the west by the drainage ditch; along its north line was the Raynolds ditch; upon the southeast was the Van Horne tract. From the south corner of the triangular tract the drainage ditch ran south upon the west side of the Van Horne tract. That portion of the Raynolds ditch lying east of the drainage ditch was by the latter severed from its connection with the La Union ditch. In order to supply water for the irrigation of the triangular and Van Horne tracts, the east end of the Raynolds ditch was connected with the Canutillo lateral, and thereafter the water for irrigating the two tracts was obtained from such lateral. In this way the flow of the water in the ditch was reversed, and the water to irrigate the triangular tract flowed first through that portion of the ditch upon the north end of the Van Horne tract.

By warranty deed dated April 5, 1928, Gillett and wife conveyed the triangular tract to appellees, Trousdale and Goddard. The habendum clause of the deed reads:

"To have and to hold the above described premises together with all and singular the rights and appurtenances thereto in anywise belonging unto the said R. L. Trousdale and Mrs. S. L. Goddard and their heirs and assigns forever."

On May 3, 1928, appellees brought this suit against Van Horne to enjoin him from interfering with their use of the ditch for the irrigation of the land so acquired from Gillett and wife. Upon trial without a jury, the appellees were granted the relief sought.

It is unnecessary to discuss separately the various assignments and propositions submitted by appellant.

We agree with the finding and conclusion of the trial court that a prescriptive right by adverse user was shown to have been acquired by Gillett, but this phase of the case need not be discussed, for upon the undisputed facts Gillett is shown also to have acquired an easement in the Raynolds ditch by the deed from Raynolds to him, and this easement, in so far as it was appurtenant to the triangular tract, passed to appellees by the deed to them from Gillett and wife. The deed from Raynolds to Gillett does not expressly grant such easement, but an express grant is not essential, as appellant asserts.

The facts show that in 1909 Raynolds acquired a tract of land which he cleared and placed in cultivation. Along the north line of the land he constructed a ditch which was used to carry water to the land for the purpose of irrigation. Later he conveyed separate parcels of the land to Gillett and others. The ditch was open, plain, and permanent in its nature.

Upon this state of facts a well-recognized rule of law applies, which is thus stated in Rollo v. Nelson, 34 Utah, 116, 96 P. 263, 26 L. R. A. (N. S.) 315:

"On a severance of an estate by a sale of a part thereof, all easements of a permanent character, that have been created in favor of land sold, and which are open and plain to be seen, and are reasonably necessary for its use and convenient enjoyment, unless expressly reserved by the grantors, pass as appurtenances to the land."

In the syllabus of the opinion in Phillips v. Phillips, 48 Pa. 178, 86 Am. Dec. 577, it is said:

"Servitudes adopted by owner of land, which are of a permanent nature, notorious or plainly visible, and from the character of which it may be presumed that he intended their preservation as evidently necessary to the convenient enjoyment of the property to which they belong, become, when the lands are divided and pass into other hands, permanent appurtenances thereto, and neither the owner of the dominant or of the servient portion of the land has any right to interfere with their proper use and enjoyment."

The doctrine thus announced was applied in Howell v. Estes, 71 Tex. 690, 12 S. W. 62, Miles v. Bodenheim (Tex. Civ. App.) 193 S. W. 693, and perhaps other cases in this state. See, also, Gorton-Pew Fisheries Co. v. Tolman, 210 Mass. 402, 97 N. E. 54; 38 L. R. A. (N. S.) 882; also notes in 26 L. R. A. (N. S.) 315, and 38 L. R. A. (N. S.) 882.

That it was the intention of Raynolds to give to his grantees the right to use the ditch as it had been aforetime and so understood by all parties is conclusively shown by the fact that his grantees and those in privity with them have so used the ditch from the time Raynolds conveyed the several parcels. Upon these undisputed facts it is clear the deed from Raynolds to Gillett granted an easement by implication, whereby the right was vested in Gillett to use the ditch for irrigation of his land.

It is also well settled that an easement annexed as appurtenant to land passes as an appurtenance with a conveyance of the dominant estate unless expressly reserved from the operation of the grant. 19 C. J. 935; 9 R. C. L. 803; Howell v. Estes, supra. The conveyance from Gillett and wife thus passed the easement to appellees. Especially is this true in view of the habendum clause of the deed.

As to the issue of abandonment, the evidence abundantly supports the ruling of the trial court thereon in favor of appellees.

As stated above the water in the ditch originally was taken from the La Union ditch and flowed east, passing the Gillett tract before it reached the Van Horne land, but, when the drainage ditch was dug in 1918, the eastward flow was thereby obstructed. The Raynolds ditch was then connected with the Canutillo lateral to the east, and the flow of

the water was then to the west, passing the Van Horne tract before it reached Gillett. While not directly raised by any proposition in the brief, it seems some point is made in argument with respect to the change indicated. We regard this as unimportant. The servitude with which the entire Raynolds ditch was burdened was that of conveying water to the various landowners. The direction in which the water flowed and the source of its water supply were immaterial details; the change imposed no greater servitude. In any event, Van Horne's predecessor in title and Van Horne himself acquiesced in the change and affirmatively ratified the same by accepting the benefit thereof. They cannot be heard to complain of the same.

Affirmed.