## OGDEN et al. v. JONES et al.

### No. 7557.

Court of Civil Appeals of Texas. Austin.
March 11, 1931.

Rehearing Denied April 1, 1931.

Shropshire & Adkins, of Brady, and Critz & Woodward, of Coleman, for appellants.

Wilkinson & Wilkinson, of Brownwood, for appellees.

BLAIR, J.

Appellants, Mrs. Mary Ogden joined by her husband E. L. Ogden, and her children of a former marriage with H. P. Roddie, deceased, sued W. D. Jordan, Ira Mayhew, and A. L. Mayhew, hereinafter called defendants, and the city of Brady and its officials, hereinafter called the city, in trespass to try title to recover the south half of block 58 of Fulcher's addition to the city. All defendants disclaimed as to any land sued for except as to a 50-foot strip running east and west entirely across and near the north boundary of the block which they alleged had been dedicated to the city as a public street by H. P. Roddie during his life time; and the defendants further plead: (a) that they had purchased a part of block 58 from the appellants with an apparent or visible way of ingress and egress over the land remaining in appellants, which right of way passed to them under the term "appurtenances," as used in the deed of conveyance and as essential and necessary to the use of the part conveyed; and (b) that such apparent easement or visible way of ingress and egress was impliedly granted to them over the land remaining in appellants as reasonably necessary to the enjoyment of the part conveyed.

On a trial to the court without a jury appellants were awarded the fee-simple title to the part of block 58 sued for, subject, however, to a perpetual "appurtenant right or easement," in favor of defendants as a way of ingress and egress over a 20-foot strip running east and west entirely across the block, and about the center of 50-foot strip described. The trial court also held that the evidence did not establish a dedication of the 50-foot strip described as a public street by H. P. Roddie during his lifetime, and that neither the pleadings nor evidence showed any estoppel in favor of the city with respect to its dedication as a public street. Hence this appeal.

Appellants contend that the undisputed evidence shows no part of block 58 retained by them to be subject to the perpetual appurtenant right or easement in favor of defendants as a way of egress and ingress over the 20-foot strip awarded them by the trial court. By cross-assignments of error, the city and the defendants contend that the trial court erred in holding that the evidence did not establish a dedication of the 50-foot strip as a public street by H. P. Roddie during his lifetime.

In 1920, H. P. Roddie, deceased, purchased the south half of said block 58, and it became

ther after the community property of himself and his wife, now Mrs. Ogden, and their business homestead. In dimensions this property was 250 feet north and south and 466 feet east and west, and was bounded on the south by Brady creek and on the east by the old Brownwood road, and on the west by Bridge street, and on the north by a 30-foot strip of land claimed by the Gulf, Colorado & Santa Fé Railway Company, lying immediately south of its tracks and yards, which had been used as a public road or street for a number of years, and was so used until some time afterwards, when the railroad company either leased or sold a part of said 30-foot strip to Cox Produce Company, and another part to the defendants Mayhew Produce Company, on which they erected business buildings as shown by the following map:

In February, 1928, appellants sold and conveyed by warranty deed to one of the Mayhews, who in turn either sold or formed a partnership with the other above-named defendants, the east 200 feet of block 58, marked on the map "Mayhew," and on the north end of this 200-foot strip defendants constructed a produce house and ice plant, which also covered the 30-foot strip leased or purchased by them from the railroad company, and which is marked on the map "Mayhew Produce Company." Prior to these transactions, in 1920, H. P. Roddie negotiated with the city of Brady and the railroad company, seeking to close the 30-foot strip as a street, and to open as a public street in lieu thereof the 50-foot strip in question, which is marked on the map in broken black lines, and which runs east and west across block 58 from Bridge

Block No 58
CROTHERS ADDITION
to
BRADY TEXAS
E.A.Burrow Surveyor          Date - Feb 18th 1930.

Broken lines—traveled way

street to the old Brownwood road. An ordinance closing the 30-foot street as a street and accepting the 50 foot strip as a street was prepared by Roddie and the attorney for the railroad company, and was passed by the city council, conditioned that Roddie execute a deed to the city conveying the 50-foot strip. Thereafter, between April 1920, and Roddie's death in the fall of 1920, Roddie constructed a bridge or culvert leading from Bridge street to this 50-foot strip. He also employed parties to grub small shrubbery from the 50-foot strip, and it was marked off as indicated on the map. The city's grader, according to some witnesses, also marked this street by making slight ditches on the side. Roddie then commenced to construct a business building on the 30-foot strip which had formerly been the street, and on the northwest corner of block 58. He died while the foundation to this building was under construction, and nothing further was ever done with respect to that structure. After Roddie's death block 58 was set aside to Mrs. Roddie, now Mrs. Ogden, as the homestead of herself and her children by Roddie. The city thereafter paved Bridge street and assessed against the Roddie estate its proportion of the cost thereof, including the cost against the alleged 50-foot street in question. The city never did any other work on said 50-foot street, nor recognized it as a street in any manner. Roddie's sons, appellants here, thereafter constructed a building, marked "Roddy Produce Co." on the map, which covered all of the 50-foot strip except 17 feet on the south and for the entire length of the building. The defendants also constructed a platform for their produce house on the 50-foot strip, and a cooling system for their ice plant was constructed entirely within this 50-foot strip, as shown by the small square on the map. The deed from appellants to Mayhew made no mention of the street as traversing the 200-foot strip conveyed, nor was any way reserved over the part not conveyed by appellants' deed. The defendants testified that there was a visible traveled road across the property, represented by the red broken lines on the map running east and west entirely across same when they purchased the 200-foot strip from appellants, and that they would not have purchased but for that fact. Mrs. Ogden testified that she told the Mayhew, to whom she deeded the 200 feet and with whom she made the trade, that the 50-foot strip was not a street, and that the city had no claim to it, and that he in substance told her she was within her rights in the premises. The evidence shows that at the time of this conveyance there was a traveled way used by the public as shown by the red broken lines on the map, running east and west across this block, which was about 12 or 15 feet wide.

The evidence further shows that, at the time defendants purchased the 200-foot strip from appellants, there were no improvements on same; that at that time the 60-foot old Brownwood road, which was and is now a public road, was in existence; that the 30-foot road just south of the railway company's property was open and remained so until defendants built their produce house on same; and that just north of this 30-foot road and across the spur track shown on the map was a 70-foot roadway built and maintained by the railroad company, and this afforded defendants a way of egress and ingress to their property.

Upon this evidence, and with respect to the right of way or easement claimed by defendants, the trial court found as follows:

"3. The court finds that at the time the plaintiff, Mrs. Ogden, sold the east 200 feet of said block 58 to Ira Mayhew, that there then was a traveled and used road or passage way across said block from north Bridge street eastward to what is shown on the plat filed herein as the Brady-Brownwood road. And that said passage way or road has continued to be used by the public and specially by Mayhews and their patrons up to the present time.

"4. That while at present Mayhews have outlet from their property and building into the City of Brady by going on to the railroad right of way at the northwest corner of their property and thence west on the private property of the railway company to Bridge Street, or by going eastward from their property on to what is shown on the plat as Old Brownwood Road which road is now closed northward and thence on to the private property of the railway company westward to Bridge Street, and also by going south over Old Brownwood Road, crossing at a ford on Brady Creek.

"5. That the access or outlet across the railway property is permissive only and might be denied by the railway company at any time, and that the route via Old Brownwood Road and crossing Brady Creek is a bad and a considerable part of the time practically impassable crossing.

"6. That the route used and traveled by the Mayhews, their partners and customers in reaching their place of business from the town of Brady and surrounding country to at least the extent of 75% is the road way or passage way across the property of the plaintiffs which was in use at the time the plaintiff sold Mayhew said property, and has been in constant use since said time. The court further finds that said latter route is now the only practicable route and at the time of the sale of the property by the plaintiff Mrs. Roddie to Ira Mayhew was the only practicable route from said property into the business part of the town of Brady."

■■ There is no basis in the preceding evidence for the award to defendants of the 20-

foot "appurtenant or easement" as a way of ingress and egress over the part of block 58 remaining in the appellants. The deed of conveyance contained no such reservations, and such a way cannot be sustained as an implied reservation of way by necessity, because, at the time the defendants purchased the 200 feet from appellants, there were other ways of ingress and egress to it, particularly the old Brownwood road which was a public road. The fact that the old Brownwood road became practically impassable when it rained, on account of crossing Brady creek, is not material, because it was and is a public road and may be bridged or improved so as to be passable at all times. The finding of the trial court that the way of ingress and egress over the 30-foot strip and across the spur track into the 70-foot right of way maintained by the railway company was merely permissive may not have support in the evidence. The evidence in this regard merely shows that, before the defendants placed any improvements on the 200-foot strip purchased from appellants, they also purchased the 30-foot strip from the railroad company with an apparent way over the spur track to the 70-foot right of way maintained by the railroad company. This presents the same state of facts as regards the conveyance by appellants to the defendants, and certainly, if the apparent and visible way in one instance was permissive only, it should have been so held in the other instance. So the rule relied upon by appellants, to the effect that the law presumes that one will not sell land to another without a way of access to it, is not applicable because defendants had at least two ways of access to the property conveyed to them by appellants at the time they purchased, and another way was added when they purchased the 30-foot strip from the railroad company before they constructed any building or used the 200-foot strip purchased from appellants for any purpose. It is true that the Supreme Court has recognized the rule known as the one of a right of way by necessity where one conveys land to another completely surrounded by land which he retains, but they have never recognized or extended the rule so as to impose implied reservations of a way of necessity across a part of land which is not described in the deed merely because a way across such land not described affords a more practical or convenient way. In fact the Supreme Court specifically held to the contrary in the case of the State v. Black Brothers, 116 Tex. 626, 297 S. W. 213, 217, 53 A. L. R. 1181, as follows:

"However, one of the latest expressions of this court, in refusing to recognize a claim of implied reservation by a grantor, was in an opinion of Mr. Justice Gaines, in which he used this significant language:

"'There is much that commends them to favorable consideration in the remarks upon this question of Chief Justice Ryan, of the Supreme Court of Wisconsin: "We may say, however, in passing, that it is always safest to let written contracts speak for themselves. This rule is often relaxed with doubtful expediency. Parties ought to make their own contracts complete. Alienations of land are or ought to be grave and deliberate transactions. Every conveyance should contain 'the certainty of the thing granted to the full extent of the grant. What may be expressed enlarging or restricting the grant in particular cases should not be left to implication. It is often difficult, as the cases show, to determine what shall be implied in conveyances by way of grant or reservation of easement; what parties who might have spoken shall be held to intend by their silence. And because 'a deed shall be construed most strongly against the grantor,' this view applies with great force against implied reservations in the servient estate conveyed by the owner of the dominant estate. Indeed, it is remarkable that the doctrine of implied grant of easement in the land of the grantor once rested very much on the principle that the grantor should not be heard to derogate from his grant (Howton v. Frearson, 8 Term Reports, 50); and yet the same doctrine has been extended to implied reservations to the grantor in what he conveys in direct derogation of his grant. On principle, therefore, we should be disinclined to enlarge or limit estates granted by implication of law further than a general current of decisions might oblige us." Dillman v. Hoffman, 38 Wis. 573.' Sellers v. Texas Central R. Co., 81 Tex. 460, 461, 17 S. W. 32 [13 L. R. A. 657]."

This decision is also contrary to the contention of the defendants that the way across the land not conveyed by appellants passed as an implied grant under the general clause "appurtenances thereto belonging," as contained in the deed. In fact, the decisions are uniform in holding that nothing will pass by the term "appurtenances," except such land as is indispensable to the use and enjoyment of the property conveyed.

With respect to the cross-assignment of error that the court erred in finding and concluding that the 50-foot strip was not dedicated as a public street by H. P. Roddie during his lifetime, we think the evidence clearly sustains that conclusion. It is true that negotiations were started looking to the opening of the 50-foot strip as a public street. An ordinance was passed by the city council closing the 30-foot strip and authorizing or accepting the 50-foot strip as a public street, but conditioned that H. P. Roddie make a deed to the city conveying the 50-foot strip, which he never did. It is also true that about the time these negotiations were started in 1920 some work was done with respect to marking the street and grading it, but that after that time the city never in any manner

recognized it as a public street, nor did any of the parties involved in this litigation ever recognize it as a public street. The appellants constructed a building covering all of the 50-foot street, except about 17 feet at its west end. The defendants constructed their platform, extending same 15 feet out into this 50-foot strip, and also constructed their cooling plant entirely within this strip, and leaving only a part of it to the south of the cooling plant. The city assessed the improvements on Bridge street against the Roddies' property, including this 50-foot strip; thus it is shown that none of the parties at interest ever recognized the 50-foot strip as a street. No fact was pleaded or proved by the city which would estop the appellants from setting up the fact that the street had not been dedicated by H. P. Roddie during his lifetime; nor did the defendants plead or prove any fact which would estop the Roddies from setting up the fact that they had not dedicated this street to the public. One of the defendants testified that he examined the record and saw the condition of it, which necessarily included the fact that the city had passed the ordinance closing the 30-foot street and accepted the 50-foot street only upon condition that H. P. Roddie would execute to it a deed conveying the 50-foot strip.

From what has been said we reverse the judgment of the trial court awarding to the defendants a 20-foot appurtenant right or easement over the portion of block 58 retained by appellants, and here render judgment for appellants for title and possession of the entire portion of block 58 retained by them.

Reversed and rendered in favor of appellants.