## SCARBOROUGH v. ANDERSON BROS. CONST. CO.

### No. 3359.

Court of Civil Appeals of Texas. El Paso.
Jan. 16, 1936.

Rehearing Denied Feb. 6, 1936.

Lea & Edwards, of El Paso, for appellant.

Richard F. Burges and W. S. Howe, both of El Paso, for appellee.

HIGGINS, Justice.

This is a suit by the appellee against the appellant to enjoin the latter from interfering with the use of a flume which constitutes a part of an irrigation system. Judgment was rendered granting the relief sought. The appeal is submitted upon findings and conclusions filed by the trial court. They read:

"Findings of Fact.

"On the 17th day of August, 1925, the First National Bank of El Paso, Texas, hereinafter called "Bank", acquired from S. S. Carpenter and wife a small tract of land about ten miles easterly from El Paso and being on the northeasterly side of State Highway No. 1, as it then ran. The Franklin irrigation canal being immediately southwest of said highway. The bank made a map of said tract, dividing it into lots, most of which exceeded one half an acre in area, but were less than one acre, there were a few lots of greater area than one acre but none equal to two. J. B. Paden acted as its agent. in so dividing the tract and filed the map thereof in his own name in the County Clerk's office. It was contemplated by Paden and the Bank that Paden should buy the entire addition, but·this was never consummated, although the papers to effect same were drawn, and perhaps signed, but never delivered. It was contemplated by Paden and the Bank that the tract should be handled as a subdivision for residences.

"On October 15, 1926, the bank conveyed to Paden, by warranty deed, lot number nine, same containing 1.25 acres. At the time of this conveyance the entire tract was watered through a siphon or tunnel extending from the Franklin Canal under State Highway No. 1, and then through a dirt ditch on lot eight, and through or along the boundary lines of various other lots, in such a manner that when used in connection with other ditches or canals the entire tract could be irrigated. The only way to get water on this tract of land, and it was so at all times relevant herein, is from the Franklin Canal and the water must cross or go underneath the paved highway. It is relatively a large expense to so bring water across the road to irrigate the land in question. It would cost from one thousand to fifteen hundred dollars to do this.

"About the latter part of September, 1927, the Bank caused Paden to construct the flume in question, connecting with the Franklin Canal through the siphon or tunnel under the highway hereinbefore mentioned; the flume extending across lot number eight in a northeasterly direction near the northwest boundary line of said lot and emptying into a dirt ditch through which, and its branches, the entire addition is watered. This affords, and afforded at all times relevant, the only practical means of irrigating the various lots composing this addition. The entire expense of constructing the flume and connecting same with the Franklin Canal was slightly over $750.00.

"Paden was at all times relevant herein the exclusive agent for the bank in the management, control and sale of this addition, which was known by the name of Padenvale. It was the intention of the bank and of Paden that said scheme of irrigation should be for the benefit of the entire addition. The most casual inspection of the premises made this readily apparent. At all times since the construction of such flume, all of the tracts have been irrigated therefrom.

"On March 14, 1930, lots numbered eight and ten were deeded by the bank to Mrs. J. B. Paden, wife of J. B. Paden, as her separate property, by warranty deed in ordinary form. At the time this deed

was taken, it was known by all parties that the flume had been constructed for the use and benefit of the entire addition, and J. B. Paden and wife knew of and acquiesced therein. At all times relevant herein it was visibly, openly and continuously used for such purpose.

"On June 10, 1931, the bank, by warranty deed in ordinary form, deeded to Anderson Brothers Construction Company lots 6, 7, 11, 13, 32, 33, 34, 35, 36 and 37, Padenvale Addition. On November ————, 1932, defendant Scarborough acquired the title to lots 8, 9 and 10, Padenvale, from J. B. Paden and wife. Prior to the acquisition of such title, defendant inspected said land and said irrigation system was in open, visible use, and it was clearly apparent the use to which lot eight was being put, for the benefit of the remainder of the addition.

"The lands in question herein are without value unless same are irrigated. The bank never intended to convey its right to irrigate the balance of the lots retained by it, through lot number eight. The right to irrigate through or across lot number eight was, and is, absolutely essential to the reasonable beneficial and profitable use and enjoyment of the lands retained by the bank after the conveyance to Mrs. Paden. This statement is to be modified as follows: On the date of the deed by the bank to Mrs. Paden, it retained title to lots 6 and 7, bordering on said Highway No. 1, and if permission could have been obtained to cross said highway, at a great expense water could have been put upon said addition through one or the other of such lots.

"The State relinquished control of Highway No. 1 as a state highway, where same borders this property, in August, 1933, but said road is maintained by the County as a paved country road, and now serves as a portion of a link between two points on State Highway No. 1, as it now runs. The evidence fails to show by whom the fee in said road is owned.

"The flume was constructed in pursuance of a general scheme and plan for the use and benefit of the entire addition, and it was so represented to prospective purchasers of lots by the said J. B. Paden.

"Conclusions of Law.

"Under the facts found, there was, by implication, an easement reserved from the deed to Mrs. Paden in favor of the other lots of this addition owned by the bank. This easement is binding on her grantees.

"Where there is, in open, visible use, an easement of necessity over land in favor of other land of the grantor, there is, by implication, reserved from the deed such easement.

"Let judgment be entered in favor of the plaintiff.

"Additional Findings of Fact.

"In the sales and attempted sales of land in the subdivision in question, no representations to prospective purchasers were made by anyone in behalf of the Bank other than J. B. Paden himself, and Defendant Scarborough prior to his acquisition of the Paden title had no notice of any representations made by Paden to prospective purchasers of lots in this addition.

"Prior to the acquisition of the Paden title, Defendant Scarborough had no notice with reference to irrigation rights of the various adjacent land owners other than such notice as might be conveyed to him from observation of the existence of the ditches themselves.

"All ditches in question, other than the flume across lot 8, were earth ditches and the evidence showed that their location could be changed at will, but there was no evidence that the ditches had been changed.

"Prior to the purchase of the lots by Anderson Brothers Construction Company from the Bank by Deed dated June 10, 1931, no representations of any sort were made to Anderson Brothers Construction Company with reference to water rights.

"No evidence was offered as to whether the Bank could or could not have obtained permission to cross highway No. 1 with another flume, siphon or tunnel to carry water to land retained by it through lots 6 and 7 after its conveyance of lots 8 and 10 to Mrs. Paden.

"Mrs. Paden did not testify in the case and no witness directly testified that she knew that the flume across lot 8 had been constructed for the use and benefit of the entire addition or that she acquiesced therein, and the findings of fact heretofore made to the effect that she had such knowledge and did so acquiesce are based solely on the fact that she is the wife of J. B. Paden and was living on lot 9 in the J. B. Paden homestead, and the lay and use of

the flume and ditches was open to her observation.

"The above and foregoing findings are to be construed in connection with the original findings and the supplementary findings this day filed.

"Supplementary Findings of Fact.

"I. In connection with Finding No. 2 made for the Defendant, this Finding is made that the open visible use of the flume as a necessary link of the irrigation plant of the addition reasonably excited inquiry and a pursuit of such inquiry with reasonable diligence would have led to knowledge as to the status of the easement over the property in question.

"II. Other than the recitals in the deeds there is no evidence that Mrs. Paden paid the consideration recited for the conveyance to her; the consideration recited was largely if not entirely her notes; she was at all times relevant herein a married woman.

"III. The evidence fails to show amount of consideration Scarborough paid."

### Opinion.

 The rule is recognized in this state that an easement may be created in favor of a grantor by implied reservation. Gulf, C. & S. F. Ry. Co. v. Rowland, 70 Tex. 298, 301, 7 S.W. 718; Holman v. Patterson, 34 Tex.Civ.App. 344, 78 S.W. 989; Missouri-Kansas-Texas Ry. Co. v. Cunningham (Tex.Civ.App.) 273 S.W. 697. These cases involved rights of way of strict necessity.

In 9 R.C.L., title, "Easements," § 28, it is said: "The doctrine of the creation of easements by implication upon the severance of an estate is applicable not only to vest an easement in the grantee by implied grant, but also to create an easement in the grantor by implied reservation. In a few jurisdictions the doctrine is entirely reciprocal and the grantor stands upon an equal footing with the grantee, any distinction between implied grants and implied reservations being denied. The weight of authority, however, recognizes a distinction between an implied grant and an implied reservation, and holds that where there is a grant of land with full covenants of warranty, and without express reservation of an easement, there can be no reservation by implication, unless the easement is strictly necessary, the term 'necessary' meaning that there can be no other reasonable mode of enjoying the dominant tenement without the easement. The reasoning upon which this distinction is based is that a grant is taken more strongly against the grantor, and the law will imply an easement in favor of the grantee more readily than it will in favor of the grantor. If he intends to reserve any right over the tenement granted it is his duty to reserve it expressly in the grant."

While not definitely committed to the view that there can be no reservation by implication of an easement in favor of a grantor except in cases of strict necessity, our courts have indicated that such reservations should be implied with great caution. Sellers v. Texas Cent. Ry. Co., 81 Tex. 458, 17 S.W. 32, 13 L.R.A. 657; State v. Black Bros., 116 Tex. 615, 297 S.W. 213, 53 A.L.R. 1181; Ogden v. Jones (Tex.Civ.App.) 37 S.W.(2d) 777.

The facts here do not present the question of strict necessity. But the question here arises upon a somewhat unusual state of facts.

There can be no doubt that if the bank had held the title to lot 8 at the time it conveyed to appellee the lots described in its deed, an easement would have been implied in favor of appellee to use the flume across lot 8 for irrigation purposes. Howell v. Estes, 71 Tex. 690, 12 S.W. 62, 63; Miles v. Bodenheim (Tex.Civ.App.) 193 S.W. 693; Van Horne v. Trousdale (Tex.Civ.App.) 10 S.W.(2d) 147.

In Howell v. Estes, supra, Judge Gaines said:

"We think the weight of authority sustains the proposition that if an improvement constructed over, under, or upon one parcel of land for the convenient use and enjoyment of another contiguous parcel by the owner of both be open and usable and permanent in its character, and of such a nature as does not require the act of man to perfect or indicate its use, and the owner alienates the latter, the use of such improvement will pass as an easement, although it may not be absolutely necessary to the enjoyment of the estate conveyed. Lampman v. Milks, 21 N.Y. 505, and authorities cited; Ewart v. Cochrane, 4 Macq. 123; Kieffer v. Imhoff, 26 Pa. 438; Kilgour v. Ashcom, 5 Har. & J. (Md.) 82; Seymour v. Lewis, 13 N.J.Eq. 439 [78 Am.Dec. 108]; Elliott v. Rhett, 5 Rich. (S.C.) 405; see, also, Freeman's notes to same case, 57 Am.Dec. 762, and authorities cited.

"In Ewart v. Cochrane, supra, the court say the easement must be 'necessary for the convenient and comfortable enjoyment of the property as it existed before the time of the grant.' If, without alteration involving labor and expense, the convenience is necessary to the use of the property as it exists at the time of the conveyance, the easement passes. This seems to us the more reasonable doctrine."

That case dealt with the question of the grant of an easement by implication.

The facts in Geible v. Smith, 146 Pa. 276, 23 A. 437, 28 Am.St.Rep. 796, were very similar to Howell v. Estes, and in sustaining an easement by implied reservation the court said: "From the completion of the buildings in 1879, until after defendants purchased and went into possession of the southerly building, the 'union' stairway, as it is called by the court below, and halls, were continuously, openly, and peaceably used by all the occupants of the two buildings. With full knowledge of the easement or servitude thus imposed upon the northerly part of the lot, for the common use and benefit of both buildings, the plaintiff purchased and took possession of the same. With like knowledge, and with no notice, actual or constructive, to the contrary, defendants bought and went into possession of the southerly building. In such circumstances, the plaintiff is not in a position to question the right of defendants to use the stairway and halls; and, on principle as well as authority, the learned judge was right in so holding. It is well settled that, on the conveyance of several parcels of land, there is an implied grant or reservation, as the case may be, of all apparent and continuous easements or incidents of property which have been created or used by the vendor during the unity of possession, though they could not then, from his general ownership, have a legal existence. Washb. Easem. 73; Godd. Easem. 119. Where a continuous and apparent easement or servitude is imposed by the owner of real estate on a part thereof for the benefit of another part, the purchaser at private or judicial sale, in the absence of an express reservation or agreement, takes the property subject to the easement or servitude. Cannon v. Boyd, 73 Pa. 179; Overdeer's Adm'r v. Updegraff, 69 Pa. 110; Zell v. Universalist Society, 119 Pa. 390, 13 A. 447 [4 Am.St.Rep. 654]; Pierce v. Cleland, 133 Pa. 189, 16 A. 352 [7 L.R.A. 752]."

In Steinke v. Bentley, 6 Ind.App. 663, 34 N.E. 97, 99, it was said:

"Under the facts as found, an easement would appear to have been created by implication in favor of the tract retained by Perses Reeves when she conveyed away the tract over which the drain was constructed from the tract retained by her, and now held by appellees. The following rule is laid down in John Hancock Mutual Life Insurance Co. v. Patterson, 103 Ind. 582, 2 N.E. 188, 53 Am.Rep. 550:.

"'Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, whether by voluntary alienation or judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use.' There is a difference in the authorities as to just how far this rule ought to be extended in favor of a grantor who has failed to expressly reserve any rights in his deed; but there are many authorities supporting the doctrine as enunciated in the Patterson Case, as applicable to easements such as this, which was apparent and continuous in its character. Pennsylvania Railroad Co. v. Jones, 50 Pa. [417] 423; Geible v. Smith, [146 Pa. 276], 23 A. 437 [28 Am. St.Rep. 796]; Seymour v. Lewis, 13 N.J. Eq. 439 [78 Am.Dec. 108]; Kelly v. Dunning, 43 N.J.Eq. 62, 10 A. 276; Elliott v. Rhett, 5 Rich. [S.C.] 405 [57 Am.Dec. 750]; Harwood v. Benton, 32 Vt. 724."

In the note, 26 L.R.A.(N.S.) at page 321, it is said: "The rule has been asserted and is well supported that when a continuous and apparent easement or servitude is imposed by the owner of land upon one portion of it for the benefit of another portion, a purchaser at either a private or a public sale, in the absence of an express revocation or agreement on the subject, takes the servient property subject to the easement or servitude." See, also, cases cited in 19 C.J. 921, notes 79, 80, and 81.

The flume across lot 8 was open, usable, and permanent in its character; it did not require the act of man to indicate its use. It was reasonably necessary and an obvious part of the water distributing system for all of the lots and manifestly intended for the benefit of all of

them. Under the facts of this case and the authorities last cited, we concur in the conclusion of the learned trial court that by implication an easement was reserved from the deed to Mrs. Paden in favor of the other lots retained by the bank; and that this easement passed to appellee as appurtenant to the lots later conveyed to it by the bank.

Affirmed.

## On Rehearing.

■ Implied easements are based upon the presumed intent of the parties. They are implied to carry into effect such intention. Alley v. Carleton, 29 Tex. 74, 94 Am.Dec. 260.

Upon the facts found by the trial court, it is a most reasonable inference that when the bank conveyed lot 8 to Mrs. Paden it was the intention of the parties to the deed that the bank and the subsequent purchasers of the other lots should have the right to continue the use of the flume across lot 8 as a necessary part of the water distributing system for all the lots in the subdivided tract. The facts found plainly indicate such intention.

■ The burden rested upon appellee of showing the necessity for the easement asserted. 9 R.C.L. 754, § 21; Texas Western Ry. Co. v. Wilson, 83 Tex. 153, 156, 18 S.W. 325; Williams v. Kuykendall (Tex. Civ.App.) 151 S.W. 629; Bretzke v. Gode (Tex.Civ.App.) 289 S.W. 111.

■ As was said in the original opinion, the easement in question cannot be regarded as one of strict necessity for the findings show that when the bank conveyed to Mrs. Paden it retained the title to lots 6 and 7 and at great expense water could have been conveyed across the highway and over one of those lots if permission to cross the highway there could have been obtained. It would seem such permission is granted by article 7585, R.S. In any event there is no finding that such permission could not be obtained from the proper authorities and the burden of so showing rested upon appellee.

In implying an easement by grant, our courts have adopted the rule of reasonable rather than strict necessity. Missouri-Kansas-Texas Ry. Co. v. Cunningham (Tex. Civ.App.) 273 S.W. 697, and the Texas cases discussed in the opinion.

But the easement here asserted is that it was by implication a reserved one, and since it is of that nature, the question is whether it will be implied when the necessity therefor is reasonable rather than strict. As stated in the original opinion, the courts of this state are not definitely committed to the rule of strict necessity in the case of implied easements by reservation. In the original consideration of the appeal we regarded the question as a doubtful one, and still so regard it. But we adhere to the view that upon the facts here presented the easement should be implied because of reasonable necessity therefor. Missouri-Kansas-Texas Ry. Co. v. Cunningham, supra.

The original opinion does not clearly reflect the view we have of the case, and for this reason we have deemed it desirable to add what is here said.

The motion for rehearing is overruled.