### J. S. SELLERS v. TEXAS CENTRAL RAILWAY COMPANY ET AL.
#### No. 7105.

1. **Implied Reservations in Deed for Land.** — The conveyance of a building lot by a railway company with special covenants of title does not retain an implied reservation of the right to flood the lot in case of freshets; so held when the embankment causing the overflow was in existence prior to such conveyance.

2. **Same — Apparent Easement.** — Even those courts which hold that a reservation may be implied beyond strict necessity restrict the rule to such easements as are "apparent and continuous." An apparent easement is one that is obvious.

3. **Same.** — A purchaser from a railway company of a lot subject to overflow caused by an embankment kept up by the railway company and existing at the time of the sale might reasonably presume that the company had availed itself of competent engineering skill, and had so constructed its works as not to impede the natural flow of the water.

APPEAL from Bosque. Tried below before Hon. J. M. Hall. The opinion states the case.

*Knight, Crane & Ramsey*, for appellant.—The court erred in overruling the plaintiff's exceptions to defendants' first amended original answer, to the effect that the person under whom plaintiff claims and holds purchased the lot occupied by plaintiff at the date of the overflow from the defendant, the Texas Central Railway Company, and that

the embankment and railway complained of were constructed before said sale or purchase and said lot and land adjacent thereto had been laid out into town lots, and before said sale as of record is manifested. 11 Am. and Eng. Ry. Cases, p. 562, and note; Shearm. and Redf. on Neg., p. 596, note 2; Id., 597, note 4; Field on Dam., sec. 749; Winbourne's Appeal, 30 Fed. Rep., 169; Carlton v. F. I. & S. Co., 99 Mass., 216; Wilson v. New Bedford, 108 Mass., 264; Thayer v. Payne, 56 Mass., 328; Cobb v. Smith, 38 Wis., 33; Miller v. Railway, 63 Iowa, 680.

*L. C. Alexander*, for appellees.—The court did not err in overruling the exception of plaintiff to defendants' special plea, nor in excluding all evidence after the agreement that the facts therein stated were true was in evidence, because the said facts so stated in said special plea and agreement showed that plaintiff had no cause of action. Railway v. Morgan, 72 Ill., 157, 158; Railway v. Allen, 39 Ill., 206; Railway v. Hunter, 50 Ill., 235; Lampman v. Milks, 21 N. Y., 507; Elliott v. Sallee, 10 Ohio St., 10; Kutz v. McCune, 21 Wis., 598; 9 Watts, 152; 15 Johns., 483; Memmert v. McKeen, 4 Atl. Rep., 542; Railway v. McDougal, 8 N. E. Rep., 678; Davis v. Titusville, 6 Atl. Rep., 736; Shearm. & Redf. on Neg., 4 ed., secs. 1–8.

GAINES, Associate Justice.—Appellant brought this action to recover of the Texas Central Railway Company and of Dillingham and Clarke, as receivers of its property operating its railway, damages for the destruction of a stock of goods by an overflow of the Bosque River. The overflow was alleged to have resulted from the negligent construction of the bed of the railway across the valley of the river.

The defendant filed a special answer to the petition, in which it was averred in substance that at the time the railway was constructed the railway company owned the land along the river at the place of the embankment, including as a part thereof the lot upon which the plaintiff's goods were stored at the time of the overflow, and that the plaintiff held the lot "under a purchase from said company, who purchased the same after the erection of said railway and embankment, * * * whose title was governed by a conveyance from said company containing a clause warranting the title to the same against all persons claiming or to claim the same by, through, or under it, its assigns, or successors." It was also alleged that the parcel of land so conveyed was a lot in a town which had been laid off by the company prior to the conveyance, and that at the time the company sold this lot it also sold other lots in the town to other persons. The plaintiff demurred to this special answer, but the demurrer was overruled. The sufficiency of the answer is practically the only question presented by this appeal.

The determination of the appeal resolves itself into the inquiry whether in the conveyance of the lot by the company there was an

implied reservation of the right to flood the granted premises in case of freshets by retaining the embankment as it then existed. The questions of grant of easements by implication and of implied reservations of easements have given rise to much conflict of opinion. A distinction is generally recognized between an implied grant and an implied reservation. It is conceded to be the settled law in England "that when the owner of two adjoining lots sells one he does not reserve impliedly for the benefit of the other any easements except those of a strict necessity; * * * but that he does impliedly grant to the grantee all continuous and apparent easements which are necessary for the reasonable use of the property granted and which have been or are at the time of the grant used by the owner of the entirety for the benefit of the part granted." Wash. on Ease., 4 ed., p. 105. The reason for denying a reservation by implication is that to permit it would be to allow the grantor to derogate from the grant. Many of the American courts of the highest authority adhere to the English doctrine as to implied reservations, though there are others which lay down a rule more favorable to the grantor. The Supreme Court of Maine has decided that "when the owner of land flowed by a mill-dam sells the mill and dam and retains the land, the right to flow the land to the extent it was then flowed, without payment of damages, passes by the grant; but when the owner sells the land flowed and retains the mill and dam without reserving the right to flow, he is not protected from the payment of damages." Preble v. Reed, 17 Me., 169; Burr v. Mills, 21 Wend., 289; Godd. on Ease., 124; Washb. on Ease., 4 ed., 54; Gould on Waters, sec. 354.

Even those courts which hold that a reservation of an easement may be implied beyond strict necessity restrict the rule to such easements as are "apparent and continuous." An apparent easement is one which is obvious. Applying that rule to the facts of this case, can it be said that it obviously appeared to the purchaser that the lot which was sold was flooded by the embankment? The embankment itself was doubtless obvious enough. But it would seem to us that the purchaser might have reasonably presumed that the company had availed itself of competent engineering skill and had so constructed its works as not to impede the natural flow of the water. Under such circumstances we think it should not be held that the company by mere implication reserved a right to flow the land without paying damages therefor.

There is much that commends them to favorable consideration in the remarks upon this question of Chief Justice Ryan, of the Supreme Court of Wisconsin: "We may say, however, in passing, that it is always safest to let written contracts speak for themselves. This rule is often relaxed with doubtful expediency. Parties ought to make their own contracts complete. Alienations of land are or ought to be grave and deliberate transactions. Every conveyance should contain 'the

certainty of the thing granted' to the full extent of the grant. What may be expressed enlarging or restricting the grant in particular cases should not be left to implication. It is often difficult, as the cases show, to determine what shall be implied in conveyances by way of grant or reservation of easement; what parties who might have spoken shall be held to intend by their silence. And because 'a deed shall be construed most strongly against the grantor,' this view applies with great force against implied reservations in the servient estate conveyed by the owner of the dominant estate. Indeed, it is remarkable that the doctrine of implied grant of easement in the land of the grantor once rested very much on the principle that the grantor should not be heard to derogate from his grant (Howton v. Frearson, 8 Term Reports, 50); and yet the same doctrine has been extended to implied reservations to the grantor in what he conveys in direct derogation of his grant. On principle, therefore, we should be disinclined to enlarge or limit estates granted by implication of law further than a general current of decisions might oblige us." Dillman v. Hoffman, 38 Wis., 573.

We think there was no implied reservation in this case, and that the demurrer to the answer should have been sustained.

The defendants' receivers put in a demurrer to the petition, which was overruled by the court. The appellees have filed no cross-assignments of error, and the question of their liability is not before the court. The counsel for appellees admit this.

For the error of the court in overruling the demurrer to the special answer, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered June 19, 1891.

*Alexander & Campbell,* for appellees, argued a motion for rehearing. The motion was transferred to Tyler Term, and there overruled.