**In re Thomas J. PEARSON and Carolyn Pearson, Debtors.**

**Ben B. Floyd, Trustee, Plaintiff**

**v.**

**Cynthia Diane Fischer, Thomas J. Pearson and Michael Allen Jones, Trustee for the Pearson Children's Family Trust, Defendants.**

**Bankruptcy No. 98–32100–H4–7. Adversary No. 99–3484.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Aug. 26, 2008.

Fred Wahrlich, Floyd, Rios & Wahrlich, P.C., Houston, TX, for Trustee, Plaintiff.

Steven Leyh, Leyh & Payne, L.L.P., Houston, TX, for Defendant.

## MEMORANDUM OPINION ON TRUSTEE'S MOTION TO COMPEL CYNTHIA DIANE FISCHER TO COMPLY WITH AGREED FINAL JUDGMENT

JEFF BOHM, Bankruptcy Judge.

### I. Introduction

Cynthia Diane Fischer (Ms. Fischer) contests the ownership of a one-third mineral interest in a 95.822–acre tract partitioned from a previously undivided 150.822–acre tract jointly owned by Ms. Fischer and Thomas J. Pearson (the Debtor), one of the debtors in the main case. The Chapter 7 Estate of Mr. Pearson and his wife, Carolyn Pearson (the Estate), received 95.822 acres of the 150.822 acre tract upon a court-ordered partition as set forth in an Agreed Final Judgment en-tered on the docket on March 2, 2000 (the Agreed Judgment). [Adversary Proceeding Docket No. 12.] Thereafter, Ben B. Floyd (the Trustee), who had been appointed to administer the Estate, sought to sell the 95.822 acre portion. Ms. Fischer objected, claiming that she owns a mineral interest in the tract owned by the Estate. Thus, the issue presented to this Court is whether Ms. Fischer has any mineral interest underlying the 95.822 acres.

The Court makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52, as incorporated into Federal Rule of Bankruptcy Procedure 7052. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

### II. Findings of Fact

The facts, as stipulated to or admitted by the parties, or as adduced from testimony of the witnesses, or as established by the introduction of exhibits, are as follows:

1. The Debtor, along with Ms. Fischer, a non-debtor, both owned an undivided interest in 150.822 acres of real property in the William Fairfax Gray Survey (the Undivided Property).

2. On August 20, 1999, the Trustee filed an adversary proceeding seeking the authority to partition and sell the Estate's interest in the Undivided Property.

3. On March 2, 2000, the Clerk of this Court entered on the docket the Agreed Judgment ordering that (1) the Undivided Property be partitioned; (2) the Owners would be bound by the partition's results; (3) the Trustee would se-

lect one parcel of the partitioned Undivided Property and disclaim all rights in the other parcel; and (4) Ms. Fischer "shall disclaim any right, title or interest in the parcel selected by the Trustee as belonging to the Estate." [Adversary Proceeding Docket No. 12.] The signatories to the Agreed Judgment were (1) Fred Wahrlich, attorney for the Trustee; (2) Ms. Fischer; and (3) Ms. Fischer's attorney at the time, Steven Leyh.[1] The parties submitted the Agreed Judgment to the Honorable William R. Greendyke, the undersigned judge's predecessor, and Judge Greendyke signed the Agreed Judgment on March 1, 2000.

4. On March 15, 2001, R & W Real Estate, Inc. (the Broker) prepared, pursuant to the Agreed Judgment, a real estate appraisal report entitled *Limited Restricted Appraisal of the Partition of 150.822 Acres out of the William Fairfax Gray Survey, Abstract 248, Grimes County, Texas* (the Appraisal Report). According to the Appraisal Report, the Undivided Property was partitioned into a 95.822 acre tract (the 95.822 Acre Tract) and a 55 acre tract (the 55 Acre Tract); both tracts were valued at $95,000.00. According to the Appraisal Report, this estimated market value reflected a fee simple interest as of March 7, 2001. In addition, the Appraisal Report explicitly set forth that no minerals, mineral rights, royalties, or personal property were included in the valuation.

5. Subsequently, the Trustee, pursuant to the Appraisal Report and the Agreed Judgment, selected the 95.822 Acre Tract from the Undivided Property. Ms. Fischer was left with the 55 Acre Tract as well as the house, garage, water well, and septic system on the 55 Acre Tract.

6. On December 1, 2006, the Trustee filed an application to employ Janet Webster (the Realtor) and Prudential Gary Greene Realtors to sell the 95.822 Acre Tract.

7. On February 21, 2007, Trustee's counsel sent Ms. Fischer a letter (the February 2007 Letter) by regular first class mail, enclosing special warranty deeds (the Deeds) for execution. In the Trustee's view, the Deeds serve to effectuate the terms of the Agreed Judgment, including that Ms. Fischer disclaim any interest in the 95.822 Acre Tract and that the Trustee disclaim any interest of the Estate in the 55 Acre Tract. Ms. Fischer did not return the Deeds in executed form to the Trustee's counsel.

8. Almost one year later, on February 19, 2008, the Trustee's counsel sent Ms. Fischer another letter (the February 2008 Letter), this time by certified mail, return receipt requested. This letter explained the purpose of the Deeds and requested that Ms. Fischer execute and return them to Trustee's counsel. Once again, Ms. Fischer refused to execute the Deeds and return them to Trustee's counsel.

9. On March 11, 2008, the Trustee's counsel drafted another letter (the March 2008 Letter) detailing the attempts to contact Ms. Fischer and requesting that she execute and return the Deeds. A copy of the February 2008 Letter was enclosed with the March 2008 Letter. The March 2008 Letter was sent to the Realtor, who then attempted to hand deliver the letter to Ms. Fischer on multiple occasions. In addi-

---

**1.** Steven Leyh no longer represents Ms. Fischer. She has subsequently retained Reese W. Baker as her counsel.

tion, the Realtor attempted to contact Ms. Fischer by telephone at her work, home, and cellular numbers but was unsuccessful in her efforts.

10. On March 19, 2008, the Trustee filed in the main case the *Trustee's Motion to (I) Sell Real Property Free and Clear of All Liens, Claims, Charges, Encumbrances, and Interest Pursuant to 11 U.S.C. § 363(f) and (II) Compromise Controversy with Regard to Abstract of Judgment* (the Motion to Sell). [Main Case Docket No. 221.] The Motion to Sell sought this Court's approval to sell the 95.822 Acre Tract for $235,000.00.

11. On April 1, 2008, a copy of the March 2008 Letter and the Deeds were sent to Ms. Fischer at her workplace via overnight delivery by Federal Express (the April 2008 FedEx). After delivery of the April 2008 FedEx, which occurred on April 2, 2008, Ms. Fischer's counsel, Sam Houston, informed the Trustee's counsel of Ms. Fischer's refusal to execute the Deeds. Thereafter, Ms. Fischer retained bankruptcy counsel, Reese W. Baker, who contacted the Trustee's counsel and advised him that Ms. Fischer would not execute the Deeds.

12. On April 18, 2008, the Court signed the Order approving the Motion to Sell, and this Order was entered on the docket the same day [Main Case Docket No. 225.]

13. On April 28, 2008, Ms. Fischer filed a *Motion for Reconsideration on Agreed Order Authorizing Sale of Real Property Free and Clear of Liens* (the Motion to Reconsider) [Main Case Docket No. 227] and an *Emergency Motion to Stay the Trustee's Sale of Property* (the Motion to Stay). [Main Case Docket No. 228.]

14. On May 1, 2008, The Trustee filed *Trustee's Motion to Compel Cynthia Diane Fischer to Comply with Agreed Final Judgment* (the Motion to Compel). [Adversary Docket No. 13.]

15. On May 9, 12, and 15, 2008, hearings were held on the Motion to Compel, the Motion to Reconsider and the Motion to Stay (the Hearing). At the Hearing, Ms. Fischer and the Trustee agreed to several stipulations (the Stipulations) which they filed May 29, 2008. [Adversary Proceeding Docket No. 23.] Additional hearings were also held on August 1 and 12, 2008. The Stipulations include the following points of agreement between Ms. Fischer and the Trustee:

i. The Trustee's sale of the Estate's real property, as described in the Motion to Sell, should proceed "according to the terms of the Order and the terms and conditions set forth in the Stipulations." [Adversary Proceeding Docket No. 23.]

ii. There is no dispute that the Estate holds "fee simple title to the surface estate of the 95.822[A]cre [T]ract ... and in 1/3 of 8/8's of the mineral estate underlying the [95.822 Acre Tract] (the Undisputed Estate Mineral Interest)." [Adversary Proceeding Docket No. 23.]

iii. There is no dispute that Ms. Fischer holds "fee simple title to the surface estate of the 55[A]cre [T]ract ... and in 1/3 of 8/8's of the mineral estate underlying the [55 Acre Tract] (the Undisputed Fischer Mineral Interest)." [Adversary Proceeding Docket No. 23.]

iv. The Trustee's position is that, pursuant to the Agreed Judgment, "the Estate also holds fee simple title to an additional 1/3 of 8/8's of the mineral estate underlying the [95.822 Acre Tract] (the Disputed Estate Tract Mineral Interest) and that Ms. Fischer also holds fee simple title to

an additional 1/3 of the mineral estate underlying the [55 Acre Tract] (the Disputed Fischer Tract Mineral Interest)" (emphasis added), **but that she does not own any additional mineral interest underlying the 95.822 Acre Tract.** [Adversary Proceeding Docket No. 23.]

v. Ms. Fischer's position is that "she owns 1/3 of 8/8's of the mineral interests in the entire 150.822 acres ... and that the Trustee owns 1/3 of 8/8's of the mineral interests in the entire 150.822 acres ...", or that Ms. Fischer owns the [55 Acre Tract], the Undisputed Fischer Mineral Interests and the Disputed Estate Tract Mineral Interest and the Trustee owns the [95.822 Acre Tract], the Undisputed Estate Mineral Interest and the Disputed Fischer Tract Mineral Interest" (emphasis added). [Adversary Proceeding Docket No. 23.]

### III. Credibility of Witnesses

The court heard testimony from two witnesses, the Trustee and Ms. Fischer. The Court finds that both the Trustee and Ms. Fischer were very credible witnesses.

### IV. Conclusions of Law

#### A. Jurisdiction and Venue

The Court has jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). This dispute is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and (O). As such, this Court may enter a final judgment. 28 U.S.C. § 157(b)(1); *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1421 (5th Cir.1995). Venue is proper pursuant to 28 U.S.C. § 1409(a).

#### B. Brief Overview of Legal Issues to Resolve

This Court has been presented with a dispute over the ownership of a discrete mineral interest. In the Motion to Compel, the Trustee argues that a court order compelling Ms. Fischer to execute the Deeds is necessary given language in the Agreed Judgment ordering that Ms. Fischer shall "disclaim any right, title, or interest in the parcel selected by the Trustee." Ms. Fischer, on the other hand, has refused to sign the Deeds, which are designed to convey fee simple title, because of her belief that the Agreed Judgment requires her to convey *only* the surface interest to the 95.822 Acre Tract, rather than the full fee simple title that would also include the purported one-third mineral interest she claims to own. Thus, to resolve this ownership dispute, the Court must examine whether the Agreed Judgment compels Ms. Fischer to execute the Deeds and to thereby relinquish her purported mineral interest in the 95.822 Acre Tract.

#### C. Agreed Judgment

#### 1. Enforceability

■ As a general rule, "agreed judgments, once rendered, are contracts between the parties and operate to end all controversy between the parties." *Boyett v. Boyett,* 799 S.W.2d 360, 362 (Tex.App.-Houston [14th Dist.] 1990) (citing *Wagner v. Warnasch,* 156 Tex. 334, 295 S.W.2d 890, 893 (1956)). In the matter at bar, the controversy is whether Ms. Fischer should be compelled to execute the Deeds by means of this Court's approval of the Trustee's Motion to Compel. Because the Agreed Judgment is a binding contract operating "to end all controversy" between the parties, this Court must approve the relief requested in the Motion to Compel so long as this relief is unambiguously consistent with, and required by, the Agreed Judgment. The Trustee argues

that there is no ambiguity; Ms. Fischer argues just the contrary.

## 2. Interpretations of the Parties

### a. The Trustee's Interpretation

The Trustee notes that the Agreed Judgment explicitly orders Ms. Fischer to *"disclaim any right, title or interest* in the parcel selected by the Trustee as belonging to the Estate." [Adversary Proceeding Docket No. 12] (emphasis added). This language is arguably more encompassing than the Agreed Judgment's corresponding language ordering the Trustee to *"disclaim any interest"* in the parcel not selected by the Trustee. [Adversary Proceeding Docket No. 12] (emphasis added). Because the Trustee has already selected the 95.822 Acre Tract, the Trustee argues that Ms. Fischer must now "disclaim any right, title, or interest" in the 95.822 Acre Tract to comply with the terms of the Agreed Judgment. The Trustee believes that Ms. Fischer's execution of the Deeds—the relief requested by the Motion to Compel—is equivalent to "disclaim[ing] any right, title, or interest" in the 95.822 Acre Tract. The Trustee therefore contends that the Court must grant the Trustee's Motion to Compel in order to enforce the Agreed Judgment's terms.

The Deeds are comprised of two Special Warranty Deeds.[2] One Deed includes Ms. Fischer as the grantor of the 95.822 Acre Tract to the Trustee as the grantee, whereas the other Deed includes the Trustee as the grantor of the 55 Acre Tract to Ms. Fischer as the grantee. Both Deeds include identical language indicating that the Grantor shall convey "all of Grantor's undivided interests in the following described real property, including any and all oil, gas, and associated hydrocarbons, re-

gardless of the nature thereof and whether similar or dissimilar, and all mineral rights, mineral lease interests, royalty rights, and related interests and attributes of the mineral estate whatsoever, in, on, under, or in any way relating to the Land and owned by Grantor, together with all improvements thereon...." [Adversary Proceeding TR. EXH. 11.] In addition, each Deed includes a line for the signatures of both the grantor and the grantee. Given the extreme detail with which the Deeds' language disclaims the respective grantors' rights, the Trustee contends that Ms. Fischer's execution of the Deeds is equivalent to the Agreed Judgment's requirement that Ms. Fischer "disclaim any right, title, or interest" in the 95.822 Acre Tract. The Trustee therefore contends that the Motion to Compel should be granted.

### b. Ms. Fischer's Interpretation

While the Trustee believes that the Agreed Judgment's terms support the Trustee's Motion to Compel, Ms. Fischer argues that: (1) the Agreed Judgment is inherently ambiguous; and (2) it cannot be construed to mandate that she convey her purported mineral interest in the 95.822 Acre Tract.

### (i) Ms. Fischer believes that the Agreed Judgment is ambiguous.

The first two sentences in the second paragraph of the Agreed Judgment speak to the document's ambiguity. The second paragraph of the Agreed Judgment begins, "It is ORDERED, ADJUDGED AND DECREED that the real property legally described in Exhibits 'A' and 'B.' The ('Property') will be partitioned by R & W Real Estate, Inc. (the 'Broker'); and it is...." Ms. Fischer compellingly notes

---

2. The Deeds are found in Trustee's Exhibit 11.

that, in the above paragraph, neither the first "sentence" nor the first "independent clause" before the semicolon in the second "sentence" convey grammatically discernible meanings. The first "sentence" is meaningless because the clause beginning with "that" and including the subject "the real property" has no verb. Second, the pre-semi-colon portion of the next sentence has no subject of the verb "will be partitioned" because the only potential subject of the pre-semi-colon clause—"the Property"—is enclosed by parentheses. Finally, these two "sentences," taken together, do not properly describe what tract is to be partitioned. The first sentence contemplates "the real property described in Exhibits 'A' and 'B,'" whereas the second sentence contemplates some "Property" that is to be partitioned by the Broker. However, these two sentences do not treat these two contemplated properties as identical. This same problem recurs, as certain "Property"—presumably the "Property" mentioned in the second sentence of the Agreed Judgment's second paragraph—is mentioned several times elsewhere in the Agreed Judgment.[3] However, the term "Property," as it is used in the second sentence of the Agreed Judgment's second paragraph, and throughout the rest of the Agreed Judgment, is never defined.[4]

On another point, Ms. Fischer suggests that the Agreed Judgment is ambiguous because of an unclear relationship between the Agreed Judgment and the proposed method of partitioning the Undivided Property (assuming that the terms "Property" and "real property" used in the Agreed Judgment are equivalent and refer to the Undivided Property). Ms. Fischer notes that the Agreed Judgment contemplates that a partition be performed by the Broker but provides no guidance on the procedures for this partition. As Ms. Fischer's counsel stated in oral arguments on August 13, 2008, the Agreed Judgment is ambiguous without an accompanying partition agreement and there was no such agreement attached to the Agreed Judgment.

**(ii) Ms. Fischer believes that the Agreed Judgment does not mandate conveyance of her purported mineral interest in the 95.822 Acre Tract.**

■ Before considering Ms. Fischer's arguments that the Agreed Judgment does not require that she relinquish her mineral interest underlying the 95.822 Acre Tract, this Court must first determine whether the Agreed Judgment is indeed ambiguous. The Court must do so because Ms. Fischer's arguments rely on extrinsic evidence, and Texas rules of contract interpretation prohibit this Court from considering evidence outside the four corners of a contract absent a discernible ambiguity. *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951). Accordingly, this Court must decide whether the Agreed Judgment is ambiguous. If this Court finds the Agreed Judgment to be ambiguous, it will then proceed to evaluate whether the Agreed Judgment can be construed to require Ms. Fischer to convey her mineral interest in the 95.822 Acre Tract.

**D. Ambiguity**

**1. Case Law**

■ In determining whether the Agreed Judgment requires Ms. Fischer to

---

**3.** *See* Paragraphs 3, 4, and 5 of the Agreed Judgment, a copy of which is attached to this Memorandum Opinion.

**4.** Because the Agreed Judgment does not define the word "Property," it could reasonably be construed not to include a mineral interest as easily as it could be construed to include such an interest.

disclaim ownership to any mineral interest in the 95.822 Acre Tract, the Court must analyze the parties' intent. The Court's primary duty when examining a contract is to ascertain the intent of the parties from all of the language within the contract under the "four corners" rule. *See generally Luckel v. White*, 819 S.W.2d 459 (Tex. 1991) (explaining the "four corners" rule). Texas law states that "parol evidence cannot modify a written agreement absent ambiguity." *Sacks v. Haden*, No. 07–0472, 2008 WL 2702184, at *1 (Tex. July 11, 2008). Furthermore, whether a written agreement is ambiguous is a question of law which must be decided by examining the contract as a whole in light of the circumstances at the time the contract was formed. *Temple–Inland Forest Prods. Corp. v. United States*, 988 F.2d 1418, 1421 (5th Cir.1993); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). A writing is not ambiguous solely because the parties disagree about its correct interpretation. *Hart v. United States*, 945 F.Supp. 1009, 1011 (E.D.Tex.1996). "An instrument is ambiguous only when the application of pertinent rules of construction leaves it genuinely uncertain which one of two reasonable meanings is the proper one." *Prairie Producing Co. v. Schlachter*, 786 S.W.2d 409, 413 (Tex.App.-Texarkana 1990, writ denied).

**2. The Agreed Judgment is Ambiguous.**

▆▆▆ There is no doubt that the parties disagree about the correct interpretation of the Agreed Judgment. The intent of the parties in this document was to partition the Undivided Property, and this intent is expressed by the Agreed Judgment. However, the discrepancies in the Agreed Judgment—cited by Ms. Fischer's counsel and referenced above in their positions— leave this Court uncertain as to which of the two parties' interpretations of the Agreed Judgment is correct and what the parties' intentions were for the partition. Frankly, the Agreed Judgment is a poorly drafted document. Looking solely within the "four corners" of the document, this Court also cannot make a reasonable determination as to the method by which the partition should have been conducted and thus cannot differentiate between the reasonable interpretations offered by the parties.

▆▆▆ First, the Agreed Judgment's use of grammatically incorrect language in the second paragraph beginning with "OR-DERED, ADJUDGED AND DECREED" foreshadows the ambiguous nature of the Agreed Judgment, which contains inconsistencies and improperly defined terms. Second, while the Agreed Judgment does specify which broker will partition the real property, that disclosure alone is insufficient to make the terms of the partition unambiguous. Finally, given the Agreed Judgment's use of ill-defined or undefined terms such as "real property," "parcel," and "Property," it is no surprise that Ms. Fischer and the Trustee do not see eye-to-eye on the issue of ownership of the Disputed Estate Mineral Interest. The Court will not presume that the "real property described in Exhibits 'A' and 'B'" mentioned in the first incomplete sentence of the Agreed Judgment's second paragraph is the same undefined "Property" mentioned in the second sentence. To do so would require the Court to re-write the parties' contract, which it is not permitted to do. *See Cicciarella v. Amica Mut. Ins. Co.*, 66 F.3d 764, 767–68 (5th Cir.1995). The Court must construe the Agreed Judgment as written. *Id.*

▆▆▆ Texas rules of contract interpretation require that a reservation of minerals must clearly be stated. *Sharp v. Fowler*,

151 Tex. 490, 252 S.W.2d 153, 154 (1952) (citing *Sellers v. Texas Central Ry. Co.,* 81 Tex. 458, 17 S.W. 32 (1891)). Absent an explicit carve-out of mineral interests within the "four-corners" of the Agreed Judgment, the largest interest possible is presumed to have been conveyed by Ms. Fischer to the Trustee—in this case, both the surface and mineral interests in the 95.822 Acre Tract. However, given that this Court accepts Ms. Fischer's observation of ambiguities in the Agreed Judgment, this Court is not prepared to compel a full conveyance based only on the unclear, ill-defined, and inconsistent terms of the Agreed Judgment.[5] Because, looking at the entire Agreed Judgment, its ambiguities cannot be resolved, the document as a whole is ambiguous. *Carpenters Amended & Restated Health v. Holleman,* 751 F.2d 763, 764 (5th Cir.1985) (applying Texas law). To resolve the ambiguities in the Agreed Judgment, the Court "can no longer rely solely on the language of the contract to determine the parties' intent, and *must* look to extrinsic or parol evidence." *Id.* at 766–67; *see also Jhaver v. Zapata Off–Shore Co.,* 903 F.2d 381, 384 (5th Cir.1990) (recognizing that, once a Court determines that a contract is ambiguous as a matter of law, an interpretation of an ambiguous contract based on extrinsic evidence and the parties' intent is a matter of fact) (emphasis added).

### 3. Ms. Fischer's Testimony

■ The Agreed Judgment's ambiguity requires this Court to further examine the meaning of the instrument, for it is only where a contract is ambiguous that a court may consider the parties' interpretations and "admit extraneous evidence to determine the true meaning of the instrument." *Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995) (per curiam). This Court has made the determination that Ms. Fischer is a very credible witness, and, as such, the Court gives substantial weight to her testimony, along with any other documents pertaining to the partition ordered by the Agreed Judgment, to help determine the true meaning of the Agreed Judgment.[6]

Ms. Fischer testified that she would not have signed the Agreed Judgment if her mineral interest was to be partitioned along with the surface tract. The Court finds her testimony credible and convincing based on two important factors about which Ms. Fischer testified. Specifically, she testified that (1) she had entered into three oil and gas leases along with her siblings, Thomas J. Pearson and Beverly J. Jones, pursuant to her belief that she owned a one-third mineral interest in the entire 150.822 acre tract; and (2) she had been paying taxes on the entire property, including the mineral interests, since 1994, the year that her mother died and the Undivided Property was left to Ms. Fischer and her siblings. It is clear from her testimony that Ms. Fischer did not intend to convey her one-third mineral interest in the entire tract; she had entered into oil and gas leases as recently as 2007 with the belief that she rightfully owned a one-third interest. Additionally, her continued payment of property taxes on the mineral interests underlying the 95.822 Acre Tract subsequent to the Agreed Judgment demonstrates her continued good faith belief of ownership. Furthermore, Ms. Fischer testified that the first time she became

---

5. Ms. Fischer had the burden of showing that the parties intended that she would reserve a mineral interest. The Court finds that she has met that burden.

6. The Trustee was also a credible witness, but his testimony did not controvert Ms. Fischer's testimony.

aware of the Trustee's attempt to gain control of the mineral interest in the 95.822 Acre Tract was in February 2007, when she was sent the Deeds to execute. The Trustee had never sent her the Deeds prior to February 2007.

### 4. Factors to consider in addition to Ms. Fischer's Testimony

The previous section considered Ms. Fischer's testimony, over the parol evidence rule objections of the Trustee's counsel, on her understanding of the scope of the Agreed Judgment because of this Court's previous finding that the Agreed Judgment is ambiguous. Given the ambiguity of the Agreed Judgment, this Court may consider other factors in addition to Ms. Fischer's testimony for the purpose of contract interpretation. *Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995) (per curiam). These additional factors will be evaluated to determine the parties' intent in forming the Agreed Judgment, but also to interpret its terms.

### a. The Trustee's 1999 Complaint

Ms. Fischer argues that the original complaint filed by the Trustee (the Trustee's 1999 Complaint)[7] underscores that the parties, by means of the Agreed Judgment, did not intend that she convey both surface and mineral interests in the 95.822 Acre Tract. Ms. Fischer emphasizes that the Trustee's 1999 Complaint contemplates a distinction between the surface and mineral estates of the Undivided Property. Paragraph 24 (page 4) of the Trustee's 1999 Complaint reads as follows:

*The Trustee acknowledges that the Property [i.e. the Undivided Property]*

7. The pleading is entitled *"Trustee's Complaint to Determine Extent, Priority, and Validity of Estate's Interest in Property, and Sell Property in which the Estate has an Undivided*

*contains a gas and oil well; however, such interest is part of the mineral estate, not the surface estate, and, therefore, not part of the interest being conveyed. Further, the oil and gas from the Property [i.e. the Undivided Property] are sold to distributors, not as part of a power plant or gas company.*

[Adversary Proceeding Docket No. 1]

The language in the Trustee's 1999 Complaint by no means constitutes the most compelling evidence available to Ms. Fischer in her attempt to evaluate the scope of the Agreed Judgment. Nevertheless, the Court concludes that the Trustee's 1999 Complaint at least partially illuminates the intentions of the parties. Assuming the Trustee is not disingenuous in his Motion to Compel, both the Motion to Compel and the Trustee's 1999 Complaint are motivated by the Trustee's intention to sell some portion of the Undivided Property for the benefit of creditors affected by this particular Chapter 7 case. It is peculiar that the Trustee's 1999 Complaint concedes that the Trustee desires to sell only the surface interest; whereas, in the Motion to Compel, the Trustee seeks a judicial order mandating that Ms. Fischer execute the Deeds to thereby convey *full fee simple title*—both surface and mineral. Given this discrepancy, this Court finds that the Trustee's 1999 Complaint provides at least partial, if not compelling, support to Ms. Fischer's interpretation of the scope of the Agreed Judgment.

### b. Appraisal Report

In light of this Court's finding that the Agreed Judgment alone is insufficient to unambiguously determine the parties'

*Interest, Pursuant to 11 U.S.C. § 363(h), or, in the Alternative, for Partition."* [Adversary Proceeding Docket. No. 1.]

post-partition interests, the Court must next turn to the only other document that sheds light on the partition: the Appraisal Report written by R & W Real Estate, Inc. In this report, the Broker explicitly states that, "No minerals, mineral rights, royalties or personal property have been included in the stated value." [Finding of Fact No. 4.] The Trustee argues that, while mineral interests were not considered, the Broker took into consideration one completed sale and one active listing with oil wells on site. The Appraisal Report unfortunately does not mention how these considerations affect the indicated values of $1,000.00 per acre for the 95.822 Acre Tract and $1,625.00 for the 55 Acre Tract. As the dispute between the Trustee and Ms. Fischer revolves around the mineral interests, this Court can safely assume that these mineral interests have a value of their own apart from the surface tract. As such, the Broker's clear disclaimer supports Ms. Fischer's argument that she failed to ever disclaim her mineral interests in the 95.822 Acre Tract.

### c. Other Persuasive Facts and Circumstances

In addition to the Trustee's 1999 Complaint and the Appraisal Report, this Court considers other facts and circumstances in ascertaining the parties' intent in the Agreed Judgment.

#### (i) 7 Years

This Court wonders why the Trustee, now so convinced of his ownership of the mineral interest in the 95.822 Acre Tract, would wait almost seven years (between the Agreed Judgment entered on March 15, 2000 and the February 2007 Letter sent on February 21, 2007) before attempting to enforce his purported mineral rights by requesting Ms. Fischer to sign the Deeds. Similarly, this Court wonders why the Trustee, having sent the February 2007 Letter so urgently, would take no immediate action but rather wait another full year before attempting once more, via the February 2008 Letter, to obtain Ms. Fischer's execution of the Deeds. *See* [Findings of Fact Nos. 7 and 8.] The first extended period casts doubt on the Trustee's contention that the Agreed Judgment mandated Ms. Fischer's conveyance of her mineral interest in the 95.822 Acre Tract. Otherwise, it seems at least probable that the Trustee would have acted upon his newly acquired mineral estate at some point earlier than seven years after the Agreed Judgment was entered. The second extended period, in conjunction with the first extended period, further undermines the Trustee's contention that the execution of the Agreed Judgment represented an unequivocal intent of the parties that Ms. Fischer was giving up her mineral interest in the 95.822 Acre Tract.

#### (ii) 3 Mineral Leases

The Court also finds the Trustee's position—that the Parties intended full conveyance of both surface and mineral interests—even more dubious given Ms. Fischer's testimony that she entered into three mineral leases since 1995. In January 1995, Ms. Fischer entered into an Oil Gas and Mineral lease (the 1995 Lease) with Laramie Oil and Gas. This fact alone does not sufficiently indicate that Ms. Fischer, in signing the Agreed Judgment, intended to retain her mineral interest. However, in conjunction with two later leases entered on (1) August 2002 with Audobon Exploration (the 2002 Lease) and on (2) February 2007 with Evolution Petroleum (the 2007 Lease), the 1995 Lease becomes part of a twelve-year period—beginning before, continuing until, and enduring long after the Agreed Judgment—in which Ms. Fischer consistently manifested the belief that she owned the

mineral interest and she had not relinquished it by signing the Agreed Judgment.[8]

### (iii) Payment of Taxes

The Court also finds that Ms. Fischer's testimony that she, and not the Trustee, paid the taxes undermines the Trustee's contention that the parties intended that Ms. Fischer surrender her mineral interest in the 95.822 Acre Tract. The Trustee's suggestion at the hearing that Ms. Fischer could seek an administrative claim in this case for the amount of taxes that she paid neither supports the Trustee's position nor undercuts Ms. Fischer's argument. The fact that she, and she alone, paid the taxes each year reflects her belief that she does now own, and always has owned, the mineral interest that the Trustee claims she surrendered when executing the Agreed Judgment.

### V. Conclusion

Given the ambiguity of the Agreed Judgment and the intent of the parties as understood by the Court, Ms. Fischer should not be compelled to sign and execute the Deeds as per the Trustee's request. Accordingly, the Court denies the Motion to Compel in its entirety.

An order consistent with this Opinion will be entered on the docket simultaneously herewith.

### Attachment

### AGREED FINAL JUDGMENT

WILLIAM R. GREENDYKE, Bankruptcy Judge.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Upon agreement of the parties, Cynthia Diane Fischer and Ben B. Floyd, Trustee as represented by the signatures of undersigned counsel, the Court orders as follows:

It is ORDERED, ADJUDGED AND DECREED that the real property legally described in Exhibits "A" and "B". The ("Property") will be partitioned by R & W Real Estate, Inc. (the "Broker"); and it is

ORDERED, ADJUDGED AND DECREED that the parties will be bound by the partition of the Property made by the Broker and/or the Broker's agent; and it is

ORDERED, ADJUDGED AND DECREED that the Trustee shall pay the reasonable and necessary expenses of the Broker incurred in the process of the partition of the Property as administrative expenses under 11 U.S.C. § 503 without further order of this Court; and it is further

ORDERED, ADJUDGED AND DECREED that the Trustee shall select one parcel of the partitioned Property as belonging to the Estate, and that the Trustee will disclaim any interest in the other partitioned parcel; and it is further

ORDERED, ADJUDGED AND DECREED that Cynthia Diane Fischer shall disclaim any right, title or interest in the parcel selected by the Trustee as belonging to the Estate; and it is further

ORDERED, ADJUDGED AND DECREED that all relief not expressly granted herein is denied.

THIS IS A FINAL ORDER.

---

8. Ms. Fischer, during her testimony, referred to these leases by names other than those used in this Opinion. The leases mentioned herein refer to the companies with which Ms. Fischer signed agreements, and these agreements are found in her exhibits 3, 6, and 9.

## EXHIBIT "A"

Out of the Beverly Tucker Survey, Cert. 128, Abstract 247, Patent 658, Vol. 2, dated March 21, 1855, described as follows:

BEGINNING in the West line of the South Beverly Tucker Survey at the NW corner of the John Sollock homestead tract described by deed recorded in Vol. 27, page 31, dated April 9, 1875, said point being 800 varas North of the SW corner of said Survey;

THENCE South 19° West 800 vrs. with said 87¼ acre tract 800 vrs. to the SW corner of said Beverly Tucker Survey;

THENCE South 71° East with the South line of said Survey, continuing in all 1055.7 varas in the West line of what is now a public road and was formerly the H & TC RR Co. right of way, said point being the SE corner of a 1.4 acre tract described in a deed to W.H. Sollock dated December 2, 1937, recorded in Vol. 215, page 8, of the Grimes County Deed Records;

THENCE in a Northerly direction following the right of way line of said road and former Railroad 723 varas, more or less, to a NE corner of the 116.1 acre tract conveyed to J. Abner Meyers by deed dated Sept. 30, 1921, recorded in Vol. 95, page 299 of the deed records of said County. Said point being the SE corner of a small tract of land owned by Gill McCurry;

THENCE North 71° West 240 vrs. to a rock at a corner in the East boundary line of said Sollock's 87¼ acre Homestead tract;

THENCE North 19° East 111 varas to the NE corner of said Sollock tract and the South corner of a triangular tract of 61 acres and continuing with the East line of said 61 acre tract in all 174 varas;

THENCE North 71° West across the triangle 30 varas, a stake for corner;

THENCE North 11° West 275 varas with the West boundary line of said 61 acre triangular tract to a rock for corner, same also being the NE corner of a 17-acre tract formerly owned by J.H. Sollock;

THENCE South 74° 30' West 558 vrs. to the place of Beginning, containing 147.5 acres, more or less.

## EXHIBIT "B"

All that certain tract or parcel of land lying and being situated In Grimes County, Texas, and out of the W.F. Gray Survey, Abs. No. 248, also being partly out of a 28.5 acre tract, a 18 acre tract and a 3.91 acre tract and described in a deed from Odis Hopkins, et ux, to Floy Rice, dated March 20, 1971, of record in Vol. 300 Page 55 of the Deed Records of Grimes County, Texas, and more fully described as follows:

BEGINNING at the S.W. corner of said 18 acre tract a rock at fence corner for corner, same being a S.E. corner of Jack Pearson 116.1 acre tract

THENCE N 19° E, along the west line of said 18 acre tract and a east line of 116.1 acre tract, 173.8 vrs. to a stake at fence corner for corner.

THENCE N 69° W, along fence line, 28.3 vrs. to a stake for corner at fence corner.

THENCE N 11° W, along the west line of said 28.5 acre tract, and an east line of said 116.1 acre tract, 111.4 vrs. to a 3/8 inch rod for corner.

THENCE S 78° 30' E, 266.1 vrs. to a 3/8 inch rod for corner on the east line of said 3.91 acre tract and on the west line of a 100 foot public road.

THENCE S 4° 30' W, along the west line of said road and 50 feet from the center line of same, and east line of 3.91 acre tract, 316.2 vrs. to a 3/8 inch rod for the S.E corner of 3.91 acre tract

THENCE N 71° W, along the south line of said 3.91 acre tract and 18 acre tract 259.2

vrs. to THE PLACE OF BEGINNING, containing 12.54 acres.